OPINION OF THE COURT
Herman Cahn, J.
The within case was tried before the undersigned without a jury.
The third-party defendant Pitney Bowes promoted sales and leases of its photocopying machines by its own sales force and obtained retail customers for them. One of said customers was defendant third-party plaintiff, Comerald Associates, Inc. ("Comerald”). Pitney Bowes’ salesman convinced Comerald of the advisability of obtaining a photocopier manufactured by Pitney Bowes. He then told Comerald that it could either purchase the photocopier directly from Pitney Bowes or Pitney Bowes could arrange to have the copier leased to Corner-aid. For various reasons which are not relevant here, Comerald decided to lease the photocopier.
Thereupon Pitney Bowes’ salesman presented Comerald with a leasing application and proposed leasing contract. The application and contract forms were filled out by the salesman with information furnished in part by Comerald. Said documents were then transmitted by Pitney Bowes to plaintiff United States Leasing Corp., and executed in turn by plaintiff. *775 Thereupon Pitney Bowes formally sold the photocopier machine which had been earmarked for Comerald’s use to plaintiff, and plaintiff leased said machine to Comerald; Pitney Bowes delivered the machine to Comerald and installed it.
Comerald found that the machine did not operate properly. This was not the first machine Comerald has so obtained from Pitney Bowes and evidently Comerald found that Pitney Bowes’ machines seemed to have a history of poor operation. However, Pitney Bowes’ salesmen were persuasive, and Comerald had been persuaded into trading in its photocopier for a new model when the old one did not work.
When it finally lost patience, Comerald stopped making payment under its lease agreement. Plaintiff brings this action to collect the balance due under the leasing agreement. Comerald defends against plaintiff’s claim by claiming that the machine is not in good operating condition and interposes a third-party claim against Pitney Bowes.
As between plaintiff and Comerald, plaintiff is entitled to judgment against Comerald for the balance due, which is the sum sued upon herein, $2,336.33. The lease agreement specifically stated that lessor did not warrant the equipment. Thus, the lease states in part as follows: "No warranties by lessor. Lessee has selected both (a) equipment and (b) below named vendor from whom lessor is to purchase. Lessor makes no warranty express or implied, as to any matter whatsoever including the condition of equipment, its merchantability, or its fitness for any particular purpose and as to lessor lessee leases equipment 'As Is’.”
Thus, Comerald has no claim against plaintiff for the poor operation of the equipment, and the breach of the various warranties. The parties are experienced businessmen, who should be held to the terms of their contract. The disclaimer of warranties in the lease will be honored.
In view of the above, plaintiff is entitled to judgment against Comerald in the sum of $2,336.33 representing the sum due on its lease agreement with Comerald, which sum has been properly proven at trial.
However, Comerald does have a valid claim against Pitney Bowes.
The lease specifically stated that the plaintiff assigned to Comerald "all of the rights which lessor has against vendor for breach of warranty or other representations respecting equipment.” None of the parties disputed the validity of such *776 assignment, and therefore the court finds the assignment valid. In any event, it is logical to recognize the validity of an assignment when, as here, the manufacturer actually procured the ultimate user, and arranged for delivery of the machine to it. (See Booth v Scheer, 105 Kan 643.)
Comerald proceeds on its third-party claim, on the theory that the implied warranties of merchantability and fitness for particular purpose (Uniform Commercial Code, §§ 2-314, 2-315) were breached by Pitney Bowes.
Pitney Bowes asserts that when it sold photocopiers to plaintiff, it disclaimed the implied warranties of merchantability and fitness for use and that it limited its obligations to a lessee solely to the repair and/or replacement of such equipment. Although the specific sales contract between Pitney Bowes and United States Leasing admittedly does not specify the exact terms and conditions of the warranties given by Pitney Bowes, Pitney Bowes introduced testimony to the effect that these warranties were excluded by "course of dealing” (Uniform Commercial Code, § 2-316, subd [3], par [c]; § 1-205) in the close and extensive business relationship which existed between these companies over the years.
An implied warranty may be excluded or modified by "course of dealing” or "course of performance” or "usage of trade.” (Uniform Commercial Code, § 2-316, subd [3], par [c]; Zicari v Harris Co., 33 AD2d 17.) Subdivision (1) of section 1-205 of the Uniform Commercial Code defines "course of dealing” as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.” Although there was testimony to the effect that Pitney Bowes and United States Leasing have been dealing with each other since the mid-1950’s and that the implied warranties of merchantability and fitness for use were orally excluded from all purchase agreements with United States Leasing the testimony introduced is not sufficient for this court to conclude that a course of dealing has been established with respect to such exclusion.
After hearing all the testimony on this question, the court cannot find that there was such disclaimer. First of all, the testimony offered on this question by Pitney Bowes was, at best, inconclusive. Secondly, the lease agreement between plaintiff and Comerald specifically contained an assignment of plaintiff’s rights for breach of warranty against Pitney Bowes. Said lease agreement was filled out by Pitney Bowes’ repre *777 sentatives, and presented both Comerald and plaintiff by said representatives. If all of the relevant implied warranties had indeed been disclaimed by Pitney Bowes, why was an assignment of warranties contained in the lease agreement? The court can only conclude that the implied warranties were not extinguished and therefore were assigned. The court finds that Pitney Bowes has not met its burden of proving that the implied warranties of merchantability and of fitness were disclaimed, by course of conduct or otherwise.
The warranty of merchantability is implied in every sale of goods, if the seller is a merchant with respect to goods of that kind, unless the warranty is excluded or otherwise modified. (Uniform Commercial Code, § 2-314.) In order to satisfy the implied warranty of merchantability, the goods must be "fit for the ordinary purposes for which such goods are used” (Uniform Commercial Code, § 2-314, subd [2], par [c]). Merchantable quality means that the article is reasonably fit for the ordinary uses for which it was manufactured and need only be of "medium quality or goodness” (Schwartz v Marcose Lbr. & Trim Co., 50 Misc 2d 547).
Here the testimony revealed that the photocopier often malfunctioned, in various ways. I credit said testimony, and find that there was a breach of the implied warranty of merchantability. Comerald is entitled to collect damages for said breach from Pitney Bowes, on its third-party complaint.
Comerald not only asserts a breach of the implied warranty of merchantability, but also of the implied warranty of fitness for a particular purpose. (Uniform Commercial Code, § 2-315.) Said warranty arises where the seller at the time of contracting has reason to know the particular purpose for which the goods are required and that the buyer is relying on the seller’s skill and judgment to select or furnish suitable goods. The evidence introduced indicates that Comerald selected the trade name Pitney Bowes’ copier and further that the copier was not selected for any particular use but only for ordinary office purposes. Since the copier was selected under its trade name and not for a particular purpose, there was no breach of the warranty of fitness for a particular purpose. (Montgomery Ward & Co. v McKesson & Robbins, 55 Misc 2d 529.)
In sum, plaintiff is entitled to judgment against Comerald in the sum of $2,336.33, and Comerald is entitled to judgment over against Pitney Bowes in the same amount.