[656 NYS2d 787]

Saratoga Spa & Bath, Inc., Doing Business as Saratoga Spa & Bath Company, Respondent, v Beeche Systems Corporation et al., Appellants.

Third Department, May 8, 1997

**APPEARANCES OF COUNSEL**

*DeGraff, Foy, Holt-Harris, Mealey & Kunz, L. L. P.,* Albany *(Kirk M. Lewis* and *Scott C. Paton* of counsel), for Beeche Systems Corporation, appellant.

*William W. Lanigan,* Sommerville, New Jersey *(Anthony E. Koester* of counsel), for George Campbell Painting Corporation, appellant.

*Ganz & Wolkenbreit, L. L. P.,* Albany *(Richard H. Friedman* of counsel), for respondent.

**OPINION OF THE COURT**

CASEY, J.

Defendant Beeche Systems Corporation designs, produces and sells scaffolding and containment systems used for, *inter*

*alia*, the cleaning and painting of bridges. The Beeche system consists of a rigid, aluminum frame of interlocking eight-foot square units into which are placed pyramid-shaped bins or hoppers, which are designed to catch debris removed during the sand-blasting process. The sand-blasting debris falls through metal grating bolted to the top of the hopper and is then funnelled from the hopper into pipes for collection and eventual removal.

In 1990, Beeche contacted plaintiff to manufacture the hoppers to be used in its scaffolding system. Beeche provided plaintiff with the written specifications showing the dimensions for the hopper and Beeche fabricated a plywood plug or mockup from which plaintiff made a fiberglass mold. A sample of several hoppers was run and modifications in the dimensions were made at Beeche's request.

Soon thereafter, hoppers were manufactured by plaintiff for Beeche and used without complaint on seven projects. In 1992, defendant George Campbell Painting Corporation (hereinafter Campbell) successfully bid on two large projects involving the maintenance, blasting and painting of the northbound and southbound spans of the Goldstar Bridge in Connecticut (hereinafter the Goldstar project). As this project required the use of a containment system, Campbell entered into a contract with Beeche. The Goldstar project was Beeche's largest contract to date and certainly the most sophisticated. In addition, extremely stringent guidelines were imposed on Campbell regarding lead paint emissions. The Goldstar project had the most detailed full-lead containment specifications experienced by Beeche allowing for zero tolerance.

As part of Beeche's contract with Campbell, Beeche ordered hoppers from plaintiff commencing in January 1993. Because of credit problems that Beeche was experiencing at the time, Campbell sent a letter to plaintiff guaranteeing payment. Plaintiff supplied hoppers to Beeche for the Goldstar project, with 55 of the initial order of 200 being returned as defective. Plaintiff gave Beeche a credit without question and, thereafter, over 100 additional hoppers were supplied to Beeche for the Goldstar project (including replacements for the 55), and accepted by defendants without return.

Beeche's failure to pay for a significant amount of these hoppers, after repeated requests, resulted in this action for collection against Beeche based upon breach of contract and against Campbell pursuant to the written guarantee. Beeche answered, denying that any payment was due and owing, and counter-

claimed for incidental and consequential damages arising out of plaintiff's breach of contract and breach of various implied warranties. Campbell answered, raising several affirmative defenses and a cross claim against Beeche alleging that problems with the Beeche system caused Campbell to encounter significant delays and monetary damages.

A jury trial was held at the conclusion of which Supreme Court dismissed, *inter alia*, Beeche's counterclaims for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose, as well as all of Campbell's affirmative defenses and its cross claim. Finding that Beeche had accepted all of the hoppers supplied by plaintiff and that they conformed to the contract specifications, the jury returned a verdict in favor of plaintiff on its breach of contract cause of action in the amount of $41,396.10. A judgment was subsequently entered from which defendants now appeal.

■ Beeche initially claims error with Supreme Court's dismissal, at the close of defendants' case, of its counterclaims based on an implied warranty of merchantability (UCC 2-314) and implied warranty of fitness for a particular purpose (UCC 2-315). The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection (UCC 2-314). This warranty applies only where the seller is a merchant (UCC 2-314). Given the sales to Beeche with respect to the other seven projects, as well as the several involved orders for the Goldstar project, plaintiff is a merchant within the meaning of the statute and not, as plaintiff contends, an isolated or casual seller of goods (*see*, UCC 2-314, comment 3; *Colopy v Pitman Mfg. Co.*, 206 AD2d 864).

Even if plaintiff is a merchant, a claim under UCC 2-314 cannot arise unless the goods sold are not of merchantable quality. For goods to be of merchantable quality they need to be reasonably fit for their intended purpose; they need not, however, be perfect (*see*, *United States Leasing Corp. v Comerald Assocs.*, 101 Misc 2d 773, 777).

The evidence reveals that after plaintiff produced the unfinished hoppers, Beeche would, as the specifications required, trim them to fit the frame fixture into which they were placed. It only rejected 55 hoppers for which proper credit was given and Beeche did not seek any other remedial measures. Beeche did not raise any objections as to any other

hoppers until this action was commenced (*see, e.g., Sparks v Stich*, 135 AD2d 989, 990). If there were problems, these would necessarily be observed by Beeche prior to and during the finishing process and shipment. We find that based on this record the condition of the unfinished hoppers was such as to pass without objection under the contract description, was fit for their ordinary purpose and within the run variation permitted (*see*, UCC 2-314 [2] [a], [c], [d]).

For an implied warranty of fitness for a particular purpose claim to arise, the buyer must establish that the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required and that the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods, and that the buyer did in fact rely on that skill (UCC 2-315; *see, United States Leasing Corp. v Comerald Assocs., supra*, at 777). "The existence of this warranty, therefore, depends in part upon the comparative knowledge and skill of the parties" (*Blockhead, Inc. v Plastic Forming Co.*, 402 F Supp 1017, 1024).

At the time of the subject orders Beeche was familiar with and had used the material for a couple of years without expressing dissatisfaction. Their usage was no longer theoretical and Beeche had extensive field experience with functioning systems. Moreover, while plaintiff was aware of the general nature of the hoppers' use and function, it never had field experience with Beeche's specialized use of the finished component parts. As such, no view of the evidence would have supported a conclusion that Beeche was relying on plaintiff's skill and knowledge at the time it ordered the hoppers for the Goldstar project (*see, supra*, at 1024). Consequently, both counterclaims were properly dismissed by Supreme Court.

Beeche also claims that Supreme Court erroneously excluded certain evidence. The particular hoppers kept inside at Beeche's plant and the photographs and measurements of those at plaintiff's facility were either stacked for several years without spacers to prevent the lip from bending or depicted hoppers that had been sitting outside at plaintiff's facility, neglected and subject to weathering and deterioration since September 1993. As none of this evidence was in substantially the same condition as when the alleged problem occurred (*see*, Prince, Richardson on Evidence § 4-202, at 142-143 [Farrell 11th ed]; *see also, People v Estrada*, 109 AD2d 977, 978-979), nor was it an accurate and fair representation (*see, Khalil v Marion*, 200 AD2d 500), exclusion was proper. Plaintiff's admis-

sion into evidence of a portion of a hopper taken from its facility does not change this conclusion as this exhibit was not only admitted without objection but, unlike the excluded evidence, it was admitted only to give the jury an idea of its over-all look rather than to demonstrate a particular aspect or feature.

Furthermore, Beeche was not, contrary to its contention, entitled to an adverse inference charge with respect to the deterioration of the hoppers stored outside at plaintiff's facility. In these circumstances, sanctions as a result of the spoilation of evidence are not warranted as the evidence fails to support a finding that an intentional or negligent destruction of crucial evidence by plaintiff occurred, especially since Beeche itself permitted the spoilation of allegedly defective hoppers that were retained in its possession (see, Prince, Richardson on Evidence § 3-141, at 94-95 [Farrell 11th ed]; see also, Abar v Freightliner Corp., 208 AD2d 999, 1001-1002; Matter of Eno, 196 App Div 131, 163).

■ We also conclude that the out-of-court statement of George Campbell regarding his reasoning for agreeing to a contract reduction was properly excluded. This statement, which was clearly offered for its truth, constituted self-serving hearsay and no exception to the hearsay rule has been established (see, Bazza v Banscher, 143 AD2d 715).

■ With respect to Campbell's claims of error, only a few warrant discussion. We initially reject Campbell's arguments with respect to its letter of guarantee. Campbell drafted the unsolicited guarantee and sent it to plaintiff. As we find this guarantee to be unambiguous, its interpretation was a question of law (see, Keis Distribs. v Northern Distrib. Co., 226 AD2d 967, 968; Mendel-Mesick-Cohen-Architects v Peerless Ins. Co., 74 AD2d 712, 713). Supreme Court's interpretation that the guarantee of payment went to all of the hoppers ordered by Beeche from plaintiff for the Goldstar project was appropriate. Furthermore, the judgment signed by the court upon the special verdict properly reflected Campbell's liability, an issue not distinct from Beeche's liability in light of the guarantee, and was in accordance with CPLR 5016 (b).

■ We also find no merit to Campbell's contention that Supreme Court erred in prohibiting it from presenting a summation to the jury. As the record before us fails to indicate that Campbell made any objection to this ruling, this issue is not preserved for our review (see, Matter of Miriam MM., 165 AD2d 934; Haas v King, 216 App Div 821; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4016.02). Campbell's contention that it

excepted to the court's ruling during an off-the-record discussion is unavailing (see, Hamilton v Raftopoulos, 176 AD2d 916, 917, lv denied 79 NY2d 753). In any event, as Campbell's cross claim and affirmative defenses had been dismissed, a ruling with which we agree, the rights and/or liabilities of Beeche and Campbell vis-à-vis plaintiff were identical and, therefore, the substantial and protected right afforded under CPLR 4016 was not abridged here (see, Tomassi v Town of Union, 58 AD2d 670, 671, mod on other grounds 46 NY2d 91; Martin v Marshall, 25 AD2d 594, lv denied 18 NY2d 579; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4016.03).

■ We finally determine that there is an error in the judgment with respect to the prejudgment interest. A surety's liability is limited to the amount specified "plus interest from the date of the surety's default" (Fidelity N. Y. v Aetna Ins. Co, 234 AD2d 261, 262; see, Carrols Equities Corp. v Villnave, 57 AD2d 1044, 1045, lv denied 42 NY2d 810; see also, General Obligations Law § 7-301). As conceded by Campbell, it was in default as of January 18, 1994 when a demand was made. As January 18, 1994 is the earliest date a cause of action existed, it is the date from which interest should be computed with respect to Campbell (CPLR 5001 [b]). Furthermore, prejudgment interest should not have been granted in excess of the statutory rate of 9% (CPLR 5004) as Campbell's letter of guarantee made no provision for interest (see, Levy, King & White Adv. v Gallery of Homes, 177 AD2d 967, 968; Marine Midland Bank v 281 Groton Corp., 142 AD2d 941). The judgment should, therefore, be modified accordingly. We have reviewed all remaining contentions and find them lacking in merit.

CARDONA, P. J., PETERS, SPAIN and CARPINELLO, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by remitting the matter to the Supreme Court for a recomputation of prejudgment interest in accordance with this Court's decision, and, as so modified, affirmed.