[700 NYS2d 588]

Linda Searle et al., as Coadministrator of the Estate of Paul Searle, Deceased, et al., Appellants, v Suburban Propane Division of Quantum Chemical Corporation, Respondent.

Third Department, January 6, 2000

336

APPEARANCES OF COUNSEL

*Sidney P. Cominsky, P. C.,* Syracuse, for appellants.

*Hancock & Estabrook, L. L. P.,* Syracuse (*Janet D. Callahan* of counsel), for respondent.

OPINION OF THE COURT

Mercure, J. P.

Paul Searle (hereinafter decedent) was fatally injured in a propane explosion that occurred on March 5, 1994 at his residence in the Town of Tully, Onondaga County. Defendant

installed the propane transmission system at the Searle residence in January 1994, as a replacement for a system that had been previously installed by another propane vendor. As with the prior system, defendant installed piping from the outdoor propane storage tank along the ground to the edge of the house, then underneath a wood deck and through the exterior wall of the house into the basement. On the day of the accident, decedent removed "a number of feet" of snow and ice that had accumulated on the roof of the house and then left with his wife, plaintiff Linda Searle (hereinafter plaintiff), for the day. When decedent and plaintiff returned home that night, they detected an odor, which decedent identified as propane. After changing his clothes, decedent began investigating the source of the odor and when he turned on the basement lights, an accumulation of propane gas exploded. On the day after the accident, the Cortland County fire investigator and representatives of defendant investigated the scene of the explosion. The fire investigator determined that decedent had shoveled snow off the roof onto the wood deck. The accumulation of snow caused the deck to collapse, which in turn ruptured the pipeline running under the deck and caused the propane leak that led to the explosion.

Plaintiffs thereafter commenced this action to recover for decedent's wrongful death and conscious pain and suffering, plaintiff's emotional distress and loss of consortium, and property damage, alleging causes of action sounding in ordinary negligence and res ipsa loquitur, strict liability based upon the ultrahazardous nature of the activity, products liability based upon defective design and mistake in the manufacturing process, and breach of implied warranty. Following joinder of issue and discovery, defendant moved for summary judgment dismissing the complaint. Supreme Court partially granted the motion and dismissed the causes of action alleging strict liability (sixth), products liability based upon defective design (seventh) and manufacture (eighth), breach of warranty (ninth) and res ipsa loquitur (tenth). Plaintiffs appeal.

■ Initially, we agree with plaintiffs that Supreme Court erred in dismissing the causes of action predicated upon defective design and breach of warranty theories. In view of the fact that the subject propane supply and distribution system was custom fabricated by defendant on the property where the explosion occurred, we conclude that a prima facie showing of defendant's negligence (as found by Supreme Court and not challenged on this appeal) inevitably raises material questions

of fact on the causes of action based upon breach of warranty and defective design.

The New York standard for determining the existence of a design defect requires an assessment of whether "if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 108; *see, Denny v Ford Motor Co.*, 87 NY2d 248, 257). "This standard demands an inquiry into such factors as (1) the product's utility to the public as a whole, (2) its utility to the individual user, (3) the likelihood that the product will cause injury, (4) the availability of a safer design, (5) the possibility of designing and manufacturing the product so that it is safer but remains functional and reasonably priced, (6) the degree of awareness of the product's potential danger that can reasonably be attributed to the injured user, and (7) the manufacturer's ability to spread the cost of any safety-related design changes" (*Denny v Ford Motor Co., supra*, at 257; *see, Voss v Black & Decker Mfg. Co., supra*, at 109).

Notably, although "efforts have been made to steer away from the fault-oriented negligence principles by characterizing the design defect cause of action in terms of a product-based rather than a conduct-based analysis * * * the reality is that the risk/utility balancing test is a 'negligence-inspired' approach, since it invites the parties to adduce proof about the manufacturer's choices and ultimately requires the fact finder to make 'a judgment about [the manufacturer's] judgment' " (*Denny v Ford Motor Co., supra*, at 257-258 [citations omitted], quoting Birnbaum, *Unmasking the Test for Design Defect: From Negligence [to Warranty] to Strict Liability to Negligence*, 33 Vand L Rev 593, 610, 648). "Thus, in a design defect case there is almost no difference between a prima facie case in negligence and one in strict liability" (*Lancaster Silo & Block Co. v Northern Propane Gas Co.*, 75 AD2d 55, 62; *see, Denny v Ford Motor Co., supra*, at 258; Schwartz, *New Products, Old Products, Evolving Law, Retroactive Law*, 58 NYU L Rev 796, 803 [1983]).

Similarly, although the establishment of the strict products liability remedy significantly diminished the need to rely on claims based upon an implied warranty theory, and the available defenses and limitations periods may differ, there remains "a high degree of overlap between the substantive aspects of the two causes of action" (*Denny v Ford Motor Co., supra*, at

256). "As a practical matter, the distinction between the defect concepts in tort law and in implied warranty theory may have little or no effect in most cases" (*id.*, at 262; *see, Winckel v Atlantic Rentals & Sales*, 159 AD2d 124). Based upon the particular factual setting of this case, as previously described, and the fact that the causes of action alleging negligence, defective design and breach of warranty are predicated upon a common factual background, Supreme Court's conclusion that plaintiffs opposed the summary judgment motion with evidence sufficient to raise a material question of fact as to defendant's negligence mandated a like finding with regard to the defective design and breach of warranty causes of action.

■ We are unpersuaded by the balance of plaintiffs' contentions. First, we agree with Supreme Court that the installation or maintenance of a propane gas storage tank, transmission system and fixtures does not constitute an ultrahazardous activity so as to impose absolute liability as alleged in the sixth cause of action. In determining whether an activity is "ultrahazardous" or "abnormally dangerous," the following six criteria have been found useful: " '(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes' " (*Doundoulakis v Town of Hempstead*, 42 NY2d 440, 448, quoting Restatement [Second] of Torts § 520). In view of the widespread use of propane gas as a commercial, consumer and household product and the reasonable precautions that can be taken to prevent explosion, we are not persuaded to label its use as an ultrahazardous activity (*see, e.g., Snyder v Jessie*, 164 AD2d 405, 412, *appeal dismissed* 77 NY2d 940 [residential storage and delivery of heating oil]; *750 Old Country Rd. Realty Corp. v Exxon Corp.*, 229 AD2d 1034 [storage of gasoline]; *Farina v Niagara Mohawk Power Corp.*, 81 AD2d 700 [operation of electric power lines]).

■ We also agree with Supreme Court's conclusion that plaintiffs' cause of action based upon the doctrine of res ipsa loquitur must fail. "The conditions usually required before the rule may be applied are stated to be (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or

instrumentality within the exclusive control of the defendant; (3) it must not be due to any voluntary action or contribution on the part of the plaintiff and (4) evidence as to the true explanation of the event must be more readily accessible to the defendant than the plaintiff" (*Fogal v Genesee Hosp.*, 41 AD2d 468, 474; *see, De Witt Props. v City of New York*, 44 NY2d 417, 426; *Lancaster Silo & Block Co. v Northern Propane Gas Co.*, 75 AD2d 55, 66, *supra*). In this case, there can be no question that the propane transmission system installed at decedent and plaintiff's home was not within defendant's exclusive control (*see, Lancaster Silo & Block Co. v Northern Propane Gas Co., supra*, at 66-67).

■ Finally, in the absence of any evidence as to established specifications or defendant's intended design of the system and the manner in which the system, as constructed, deviated from any such specifications or design (*see, Van Deusen v Norton Co.*, 204 AD2d 867, 868), Supreme Court did not err in dismissing the cause of action alleging defective manufacture.

CREW III, SPAIN, CARPINELLO and MUGGLIN, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant's motion and awarded partial summary judgment in favor of defendant dismissing the seventh and ninth causes of action; said motion denied with regard to said causes of action; and, as so modified, affirmed.