[783 NYS2d 698]

JOSEPH A. WOJCIK III et al., Respondents, v EMPIRE FORKLIFT, INC., et al., Appellants.

Third Department, November 4, 2004

## APPEARANCES OF COUNSEL

*Maynard, O'Connor, Smith & Catalinotto L.L.P.*, Albany (*Michael T. Snyder* of counsel), for Empire Forklift, Inc., appellant.

*Carter, Conboy, Case, Blackmore, Maloney & Laird P.C.*, Albany (*Nancy E. May-Skinner* of counsel), for Sinco Group, Inc., appellant.

*James C. Hayes III*, Amsterdam, for respondents.

## OPINION OF THE COURT

MERCURE, J.

In March 1999, while plaintiff Joseph A. Wojcik III (hereinafter plaintiff) was stocking shelves at his employer's warehouse in the City of Amsterdam, Montgomery County, he fell from the platform of the forklift on which he was standing and sustained serious personal injuries. Thereafter, plaintiff and his wife, derivatively, commenced this action, alleging that the safety device—a Fall Arrest Block (hereinafter FAB)—that he wore failed to engage, causing him to hit the floor. Plaintiffs asserted causes of action sounding in strict liability and breach of express and implied warranty against defendants, the distributor and retail seller of the FAB.

After Supreme Court denied defendants' motions for summary judgment dismissing the complaint, the matter proceeded to trial. At the close of proof, Supreme Court granted the motion of defendant Empire Forklift, Inc. to dismiss plaintiffs' express warranty cause of action against it, but denied defendants' motions to dismiss the remaining causes of action. The jury found that the FAB was not defective, that defendants breached their implied warranty that the FAB was reasonably fit for its intended purpose, and that defendant Sinco Group, Inc. breached an express warranty. Supreme Court entered judgment in favor of plaintiffs in the amount of approximately $380,000, with Sinco to indemnify Empire. Defendants appeal

from the judgment and the order denying their motions for summary judgment.*

Initially, we reject defendants' argument that they demonstrated the absence of any issue of fact regarding the defectiveness of the FAB in connection with their summary judgment motions. To meet their initial burden on the motions, defendants were required to present evidence in admissible form demonstrating that plaintiff's injuries were not caused by a defect in the product (*see Graham v Pratt & Sons*, 271 AD2d 854, 854 [2000]; *Peris v Western Regional Off-Track Betting Corp.*, 255 AD2d 899, 899-900 [1998]). They met that burden by submitting affidavits from an expert describing the tests that he performed on the FAB and his finding that the FAB performed properly if used correctly. As defendants concede, however, plaintiff's supervisor testified before trial that he also tested the device immediately after the accident and concluded that it was defective. Although defendants' expert disputed the adequacy of the supervisor's tests, we conclude that Supreme Court properly determined that the conflicting testimony created a question of fact to be resolved by the trier of fact (*see generally Dubecky v S2 Yachts*, 234 AD2d 501, 502 [1996]).

Turning to defendants' arguments that Supreme Court improperly failed to grant their motions for a directed verdict on their express and/or implied warranty claims, we agree that plaintiffs' express warranty claim should have been dismissed. In support of their claim that Sinco breached an express warranty, plaintiffs relied upon promotional literature published by Sinco which stated that the FAB's velocity-sensing brake and locking action "usually stop[s] slips or falls within inches." Even assuming that this language was sufficient to create an express warranty (*see Goga v Ortho Diagnostics*, 90 AD2d 874, 874-875 [1982]), neither plaintiff nor his supervisor—who purchased the FAB—could recall ever seeing or reading the promotional literature, which was not typically shipped with the product when it was sold. Inasmuch as plaintiffs failed to establish that the promotional literature was "part of the bargain or that [plaintiff and his supervisor] even [were] aware

---

* Inasmuch as the right to appeal from an intermediate order terminates upon the entry of a final judgment (*see Burnell v Marine Midland Bank*, 288 AD2d 784 [2001]), defendants' appeal from the order denying their motions for summary judgment must be dismissed. Their appeal from the final judgment, however, brings up for review such order (*see* CPLR 5501 [a] [1]; *Gushlaw v Roll*, 290 AD2d 667, 668 n [2002]).

of any of these advertisements before [the] purchase, [they] failed to allege an essential element of the formation of an express warranty" (*Murrin v Ford Motor Co.*, 303 AD2d 475, 477 [2003] [citation omitted]; *see CBS, Inc. v Ziff-Davis Publ. Co.*, 75 NY2d 496, 503-504 [1990]; *Babalola v Crystal Chems.*, 225 AD2d 370, 372 [1996]) and the motions for a directed verdict on the express warranty claim should have been granted (*see generally Plumb v A.C. & S., Inc.*, 305 AD2d 774, 775 [2003]).

We reach a different result with respect to plaintiffs' implied warranty cause of action. "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection" (*Saratoga Spa & Bath v Beeche Sys. Corp.*, 230 AD2d 326, 330 [1997], *lv dismissed* 90 NY2d 979 [1997] [citation omitted]). To establish that a product is defective for purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not "reasonably fit for [its] intended purpose" (*id.* at 330; *see* UCC 2-314 [2] [c]), an inquiry that "focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners" (*Denny v Ford Motor Co.*, 87 NY2d 248, 258-259 [1995]). Although there is a significant overlap between the two causes of action, the "defect" element of a breach of implied warranty claim is to be distinguished from that involved in a strict products liability, design defect claim. The latter cause of action—which, as defendants note, the jury rejected in this case—involves "an assessment of whether 'if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner' " (*id.* at 257, quoting *Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 108 [1983]).

It is this distinction between the defect analysis in a strict liability claim and that used in an implied warranty claim that defendants overlook in arguing that, because the jury found no defect, it must have concluded that the FAB did not cause plaintiff's injuries and, therefore, dismissal of the implied warranty cause of action is mandated here. Contrary to defendants' argument, the jury did not conclude that plaintiff was at fault in causing the accident or that plaintiff failed to use the FAB for the purpose which the device was intended. Instead, the record reveals that while the jury rejected plaintiffs' strict liability

claim, it concluded that the FAB was not reasonably fit for its intended purpose. That is, although the jury concluded that the FAB was not defective for purposes of the strict liability claim, it concluded that the device was defective within the meaning of UCC 2-314 (2) (c), which defines the implied breach of warranty claim. Such a conclusion is possible when "the 'ordinary purpose' for which the product was marketed and sold to the plaintiff was *not* the same as the utility [of the product] against which the risk was to be weighed" (*Denny v Ford Motor Co.*, *supra* at 263 [explaining that implied warranty and strict liability causes of action are not identical and that a jury could rationally find for a plaintiff on the former while rejecting the latter where testimony revealed that the design features of a Ford Bronco that were necessary to the vehicle's off-road capabilities made the vehicle unsafe for daily commuting, the purpose for which the vehicle was marketed]).

Here, Sinco's president, David Denny, testified that the device was designed for fall protection over six feet, explaining that the FAB automatically retracted and expanded, much like a seat belt in a car, to allow the wearer to use it while stocking shelves and that the device was designed to lock when the wearer, upon falling, triggered the device's velocity-sensing mechanism. He stated that the velocity-sensing mechanism was sufficiently sensitive to stop falls above six feet, but if the device were made more sensitive, it could significantly impede the user's movement or create a hazard by engaging too quickly, thereby jerking the user. Nevertheless, Denny conceded that "it could be a hazard" in addition if someone used the FAB at less than six feet because a shorter distance might not provide enough room for the device to stop the person using it from impacting the ground. He also admitted that none of the product information or instructions indicated that the device should be used only over six feet, that the FAB was advertised as an appropriate safety device for individuals working on forklifts similar to the one that plaintiff was using when he fell, and that such forklifts are often used to stock shelves situated at heights below six feet. In light of this evidence, we conclude that there was a valid line of reasoning and permissible inferences which could lead a rational factfinder to simultaneously conclude that the FAB's utility as a safety device above heights of six feet outweighed its risks *and* that the device was not safe for the "ordinary purpose" for which it was sold (*see id.* at 263; *cf. Searle v Suburban Propane Div. of Quantum Chem. Corp.*, 263

AD2d 335, 338-339 [2000]). Thus, Supreme Court properly refused to grant defendants' motions for a directed verdict on plaintiff's implied warranty claim (*see Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *Plumb v A.C. & S., Inc., supra* at 775). Further, upon our review of the record, we conclude that the verdict on that cause of action was not against the weight of the evidence (*see Braco v OCB Rest. Co.*, 5 AD3d 920, 921 [2004]).

Defendants' remaining arguments are either rendered academic by our decision, unpreserved or, upon review, have been found lacking in merit.

CARDONA, P.J., CREW III, SPAIN and CARPINELLO, JJ., concur.

Ordered that the order is dismissed, without costs.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as found that defendant Sinco Group, Inc. breached an express warranty; set aside that part of the judgment in favor of plaintiffs on said cause of action; and, as so modified, affirmed.