OPINION OF THE COURT
Frank P. Milano, J.
Defendant moves for summary judgment dismissing this claim *920 which alleges that defendant breached an alleged express warranty to claimant that a tax auction at which claimant purchased an aircraft had been conducted “in the manner provided by law.” Claimant cross-moves for summary judgment.
On April 17, 2008, defendant, through an auction agent, conducted a public tax compliance auction to sell its interest in an A46 Bonanza Beechcraft Aircraft (Aircraft). Prior to April 17, 2008, Robert Mark (judgment debtor) held title to the Aircraft subject to a security interest held by Iowa Trust & Savings Bank which had been perfected by filing the security agreement with the Federal Aviation Administration (FAA) on February 12, 2001.
In January of 2002, Iowa Trust & Savings Bank changed its name to First National Bank Midwest (Bank) and filed a notice of name change with the FAA. The Bank’s address and telephone number were unchanged.
On December 8, 2003, defendant filed a tax warrant against the judgment debtor with the Suffolk County (New York) Clerk in the amount of $446,630.03. On February 29, 2008, defendant filed a tax lien against the Aircraft with the FAA.
In February of 2008, defendant’s Tax Compliance Agent Michael Carney contacted the FAA to request ownership and lien information regarding the Aircraft. Carney learned of a potential “third party interest in the aircraft” held by Iowa Trust & Savings Bank of Oskaloosa, Iowa. Carney “attempted to contact the Iowa Trust & Savings Bank of Oskaloosa but there was no such bank in Oskaloosa, Iowa. There was an Iowa Trust & Savings Bank in Emmetsburg, Iowa.” Carney spoke with an officer of the Iowa Trust & Savings Bank in Emmetsburg, Iowa, and was advised that it had no lien on the Aircraft or loan with the judgment debtor. Carney served an information subpoena on the Iowa Trust & Savings Bank in Emmetsburg, Iowa, and was again advised in a written statement that the Iowa Trust & Savings Bank in Emmetsburg, Iowa, had no lien on the Aircraft or loan with the judgment debtor.
Carney also requested and received from the FAA “the original ‘Blue Ribbon’ copy of records on file with the Federal Aviation Administration concerning the aircraft up to April 10, 2008.” Carney found that the “official ‘Blue Ribbon’ records received from the Federal Aviation Administration did not mention the First National Bank Midwest, nor was it mentioned that Iowa Trust & Savings Bank changed its name.”
*921 On March 13, 2008, Carney issued a “Tax Compliance Agent’s Sale” notice which offered for sale, on April 17, 2008, “all right, title and interest of . . . Robert Mark” in the Aircraft.
On March 28, 2008, the tax auction involving the Aircraft was advertised by defendant via the New York State Office of General Services website in the “Aviation Classifieds” and the advertisement included the following language:
“NYS Dept, of Taxation & Finance, the Auctioneer & their representatives do not guarantee the accuracy of any of the descriptions or any other information pertaining to the sale of this aircraft. All prospective bidders are urged to perform their own due diligence prior to participating in the public auction sale.”
William Bergenty, the sole owner of claimant, learned of the tax auction through “a friend of mine from out west [who] tracks airplanes and saw it on line for sale. It was on — put up — it was on the computer.” William Bergenty then looked up the website announcement online. Bergenty also recalled at his deposition that the auction agent’s online announcement stated that the auction sale was “as is and where is without any warranty” and that the announcement advised prospective buyers to conduct their own due diligence prior to the sale.
William Bergenty testified that he had bought and sold more than 50 aircraft at auction over the 35 years he had operated Central Connecticut Aircraft. William Bergenty further testified that he had never checked with either the FAA or an aircraft title search company prior to purchasing an airplane at auction. Bergenty testified that ordering a lien/title search prior to the auction sale would have cost “[p]robably 200 bucks.” William Bergenty testified that after the sale, he requested and obtained a title report “within 12 hours,” which revealed the Bank lien, although it appears from Bergenty’s testimony that the initial title report received by Bergenty continued to name Iowa Trust & Savings Bank as the lienholder rather than First National Bank Midwest. Finally, William Bergenty testified that he understood prior to the tax auction that defendant was selling Robert Mark’s “rights and interest in that airplane . . . [w]hatever his equity was in the airplane they were selling.”
William Bergenty sent his son, Adam Bergenty, to the tax auction on April 17, 2008 to bid on the Aircraft.
After the auction agent announced the terms and conditions of the sale on April 17, 2008, John McCauley, an assistant *922 manager with the New York State Department of Taxation and Finance, read aloud to the bidders the “Opening Remarks for Sale of Seized Property” and certified in writing that same day that he had read the document aloud. The “Opening Remarks for Sale of Seized Property” read aloud to the bidders prior to the sale provided at relevant part as follows:
“[Defendant offers for sale] all right, title, and interest of Robert Mark in and to the property seized . . . and such interest is offered subject to any prior outstanding mortgages, encumbrances or other liens or claims of title or right by or in favor of third parties which are valid as against . . . Robert Mark and are superior to the lien of the Commissioner of Taxation and Finance of the State of New York.
“The property will be sold ‘as is’ and ‘where is’ and without recourse against the State of New York. The State makes no guarantee or warranty, expressed or implied, as to the validity of the title, quantity, weight, size, or condition of any of the property or its fitness for any use or purpose. No claim will be considered for allowance or adjustment or for rescission of the sale based upon failure of the property to conform with any representation, expressed or implied.”
William Bergenty’s son, Adam Bergenty, attended the tax auction on behalf of claimant. Adam Bergenty had bid on aircraft on prior occasions. He recalled that about 20 people attended the auction but only he and one other attendee bid on the Aircraft. Adam Bergenty “vaguely” remembered hearing the “Opening Remarks for Sale of Seized Property” being read aloud prior to bidding.
Adam Bergenty made the winning bid of $75,000 at the tax auction. After paying the purchase price, he was provided a “Certificate of Sale of Personalty” signed by both parties on April 17, 2008 and took possession of the Aircraft. The “Certificate of Sale of Personalty” provided at relevant part as follows:
“Whereas, due to public notice of the time and place of sale of the right, title, and interest of the judgment debtor in the aforesaid personal property having been given, we hereby certify that we did on the 17th day of April 2008, in the manner provided by law, at public auction, sell all of the rights, title, and interest of the judgment debtor in the aforesaid personal property . . .
*923 “For the sum of $75,000 he or she being the highest bidder and that being the highest bid; and we do further certify that said purchaser has paid to us the sum bid as foresaid; and that he or she is entitled to possession of the property.”
After paying for and taking possession of the Aircraft, claimant retained a title service company to register ownership of the Aircraft with the FAA. The title service company discovered the existence of the Bank lien (the two-page title service document identified as exhibit B at William Bergenty’s deposition referred to the lienholder as Iowa Trust & Savings Bank rather than the true lienholder, First National Bank Midwest).
On or about March 23, 2009, the Bank took possession of the Aircraft from claimant and sold the Aircraft to satisfy the Bank lien. This claim, in which claimant seeks the return of the money it paid for the Aircraft at the tax auction, together with related costs and expenses, ensued.
In support of its motion, defendant argues that the advertisements for the tax auction, the “Opening Remarks for Sale of Seized Property” read aloud at the tax auction and the “Certificate of Sale of Personalty” executed upon payment of the auction bid effectively disclaimed any warranties, implied or express, with respect to the existence of any liens against the Aircraft’s title and that claimant failed to exercise the due diligence required by the announced terms and conditions of the tax auction.
“A motion for summary judgment should be entertained only after the moving party has established, by competent admissible evidence, that it is entitled to judgment as a matter of law ... If the movant meets this initial burden, the opposing party is required to submit evidence which raises a material issue of fact to preclude an award of summary judgment” (Ware v Baxter Health Care Corp., 25 AD3d 863, 864 [3d Dept 2006]; see Svoboda v Our Lady of Lourdes Mem. Hosp., Inc., 31 AD3d 877 [3d Dept 2006]).
Each of the amended claim’s causes of action ultimately relies upon enforcement of an express warranty allegedly created by a phrase in the “Certificate of Sale of Personalty” stating that the tax auction sale was conducted “in the manner provided by law,” a document provided to claimant only after claimant had submitted the winning bid and been declared the winning bidder by the auction agent.
*924 Matter of Premier Container Corp. (Leinwand) (95 Misc 2d 859, 866 [Sup Ct, Queens County 1978]) explains that
“[t]he owner of property offered for sale at auction has the right to prescribe the manner, conditions and terms of sale, although he may waive compliance by the purchaser with the conditions (United States v Blair, 193 F2d 557; Jones v Tennessee Val. Auth., 334 F Supp 739, 743; Continental Can Co. v Commercial Waterway Dist., 56 Wash 2d 456; Zuhak v Rose, 264 Wis 286).”
The Premier Container Corp. holding also makes clear that “[t]he conditions of a public sale, announced by the auctioneer at the time and place of the sale, are binding on the purchaser, whether or not he knew or heard them” (id.; see Hessel v Christie’s Inc., 399 F Supp 2d 506 [SD NY 2005]).
The announced conditions of sale may disclaim express or implied warranties (UCC 2-316 [3] [a]; Moustakis v Christie’s, Inc., 68 AD3d 637 [1st Dept 2009]).
Here, defendant’s advertisement of the tax auction warned purchasers that it did not “guarantee the accuracy of any of the descriptions or any other information pertaining to the sale of this aircraft. All prospective bidders are urged to perform their own due diligence prior to participating in the public auction.” Defendant advised potential purchasers immediately prior to the auction that it was selling only the
“right, title, and interest of Robert Mark in and to the property seized . . . and such interest is offered subject to any prior outstanding mortgages, encumbrances or other liens or claims of title or right by or in favor of third parties which are valid as against said Robert Mark and are superior to the lien of the Commissioner of Taxation and Finance of the State of New York.”
Defendant further disclaimed any warranties by stating aloud that the “property will be sold ‘as is’ and . . . without recourse against the State of New York. The State makes no guarantee or warranty, expressed or implied, as to the validity of the title.” The court has listened to exhibit O annexed to defendant’s motion papers which is an audio recording of pre-auction announcements and the auction itself, including the reading aloud of the “Opening Remarks for Sale of Seized Property” prior to commencement of the auction. Significantly, one of the potential bidders asked aloud if there were any liens and the bidders *925 were told that, although there had been an FAA search, the defendant made no guarantee, warranty or representation as to liens, including potential federal tax liens.
Defendant has satisfied its initial burden.
“In opposition to a motion for summary judgment a party must assemble and lay bare affirmative proof to establish that genuine material issues of fact exist. Only the existence of a bona fide issue raised by evidentiary fact rather than one based on conclusory or irrelevant allegations, will be sufficient to defeat a motion for summary judgment where the movant has made out a prima facie basis for the granting of the motion” (Archambault v Martinez, 120 AD2d 632, 632-633 [2d Dept 1986]).
Further, “mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient” to defeat a motion for summary judgment (.Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Claimant’s opposition to defendant’s motion focuses on the various ways in which defendant allegedly failed to conduct the sale “in the manner provided by law” by not giving proper notice of the sale to the actual lienholder, First National Bank Midwest. Claimant’s opposition is wholly dependent on the post-sale “Certificate of Sale of Personalty” having created an enforceable express warranty to claimant that the sale was conducted in the manner provided by law. This argument fails.
Uniform Commercial Code § 2-328 (2) provides that a “sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner.” The sale of the Aircraft was complete when claimant’s bid was accepted by the auctioneer. The “certificate” executed afterwards could not, and did not, change the terms of the completed sale.
Moreover, the alleged express warranty upon which claimant now relies was not made until after the sale of the Aircraft was final and, accordingly, could not have been relied upon by claimant prior to the accepted bid, reliance being a necessary element of an enforceable express warranty (Wojcik v Empire Forklift, Inc., 14 AD3d 63, 65-66 [3d Dept 2004]).
For all of the foregoing reasons, the defendant’s motion for summary judgment is granted. Claimant’s cross motion for summary judgment is denied as moot. The claim is dismissed.