Vacation Vil. Homeowners Assn., Inc. v Town of Fallsburg (2024 NY Slip Op 06248)

Vacation Vil. Homeowners Assn., Inc. v Town of Fallsburg

2024 NY Slip Op 06248

Decided on December 12, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 12, 2024

535441
[*1]Vacation Village Homeowners Association, Inc., Appellant,
v
Town of Fallsburg, Respondent. (Action No. 1.)
Scott Pere et al., on Behalf of Themselves and all Others Similarly Situated, Appellants,
v
Town of Fallsburg, Respondent. (Action No. 2.)

Calendar Date:October 7, 2024

Before:Egan Jr., J.P., Aarons, Pritzker, Lynch and McShan, JJ.

German Rubenstein LLP, New York City (Steven J. German of counsel), for appellants.
J & G Law, LLP, Walden (Kara J. Cavallo of counsel), for respondent.

McShan, J.
Appeal from that part of an order of the Supreme Court (Stephan G. Schick, J.), entered April 20, 2022 in Sullivan County, which (1) granted a motion by defendant for summary judgment dismissing plaintiffs' strict liability claims, (2) denied plaintiffs' cross-motion for summary judgment on their trespass and private nuisance claims, and (3) denied plaintiffs' motion to strike an expert's affidavit.
Plaintiff Vacation Village Homeowners Association, Inc. (hereinafter the HOA) is a homeowners association and "vacation community consisting of approximately 220 homes on 144 acres" in the hamlet of Loch Sheldrake, located in the Town of Fallsburg, Sullivan County. As relevant here, defendant maintains a municipal sewer district and operates the Loch Sheldrake Wastewater Treatment Plant (hereinafter LSWTP), which treats effluent from properties within the sewer district. In 2019, the HOA commenced action No. 1, asserting causes of action for private nuisance, strict liability due to abnormally dangerous activity, trespass and negligence predicated on allegations that defendant wrongfully released, discharged and disposed of toxic and hazardous substances, contaminants and pollutants from the LSWTP into Evans Lake, a waterbody owned by the HOA. The HOA alleged that defendant's release of contaminants into the lake had caused harmful algal blooms and toxic algae rendering the lake unusable for recreational and aesthetic use, and that defendant had failed to engage in any remediation. In a second complaint, in action No. 2, plaintiffs Scott Pere, Josef Brandler, Lisa Coates, Jacob Lerman and Arthur Farkas, individual members of the HOA, alleged the same conduct and asserted the same causes of action.[FN1]
Following joinder of issue, defendant moved for summary judgment dismissing the complaints against it, arguing that it possessed an easement to discharge effluent from the LSWTP into Evans Lake. Further, defendant noted that the Department of Environmental Conservation (hereinafter DEC) had issued a permit authorizing and delineating limitations on, among other things, the amount of phosphorous discharged into Evans Lake, and that defendant had not substantially exceeded those limits. Plaintiffs opposed the motion and cross-moved for summary judgment on each of their causes of action, contending, in sum and substance, that defendant had unreasonably interfered with its use and enjoyment of Evans Lake and that defendant did not have permission to discharge effluent into the lake. Plaintiffs additionally sought to strike one of the expert affidavits submitted by defendant. Supreme Court, in relevant part, denied plaintiff's motion to strike, partially granted defendant's motion for summary judgment by dismissing the strict liability cause of action and denied plaintiffs' cross-motion in its entirety.[FN2] Plaintiffs appeal, and we affirm.[FN3]
We turn first to plaintiffs' cause of action alleging a private nuisance, which requires that they establish "an interference[*2](1) substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act" (DelVecchio v Collins, 178 AD3d 1336, 1337 [3d Dept 2019] [internal quotation marks and citations omitted]). Generally, "except for the issue of whether the plaintiff possesses the requisite property interest, each of the remaining elements is a question for the jury, unless the evidence is undisputed" (Schillaci v Sarris, 122 AD3d 1085, 1087 [3d Dept 2014] [internal quotation marks, brackets and citations omitted]; see Torre v Town of Tioga, 190 AD3d 1202, 1205 [3d Dept 2021]; DelVecchio v Collins, 178 AD3d at 1337).
Plaintiff's nuisance claim, at its core, is predicated on the allegation that the LSWTP discharged excess phosphorous into Evans Lake thereby causing the proliferation of harmful algae blooms that substantially interfered with the use and enjoyment of the lake. To begin, the record reflects that, during the relevant period, the LSWTP was operated by defendant pursuant to a State Pollutant Discharge Elimination System permit (hereinafter SPDES permit) issued by DEC. The SPDES permit, effective 2016 through 2021, among other things, prescribed the amount of wastewater effluent permitted from the LSWTP into Evans Lake including, as relevant here, the discharge limits for phosphorous in the treated water. According to the findings in the SPDES permit, the permissible limits for phosphorous discharge in the wastewater effluent would be more stringent considering the "severely high levels of phosphorous" already present in Evans Lake at that time. To that end, the SPDES permit also acknowledged that Evans Lake was being placed on DEC's list of impaired waters, pending the approval of the Environmental Protection Agency, in accordance with section 303 (d) of the Clean Water Act (33 USC § 1313) based upon suspected impairment attributable "to high phosphorous levels and eutrophication resulting from wastewater treatment discharges and other nonpoint sources which may also be contributing to the impacts."[FN4]
Plaintiffs' primary contention is directed at the reasonableness of defendant's alleged interference with the use and enjoyment of the lake and is rooted in the premise that compliance with the SPDES permit is insufficient to justify the interference. However, although a SPDES permit does not "authorize any injury to private property or any invasion of personal rights" (6 NYCRR 750-2.2 [b]), the existence of injury does not automatically establish that defendant's operation of the LSWTP was unreasonable. To that end, plaintiffs relied upon, among other things, the affidavit of Kevin Draganchuk, an environmental engineer, who noted that the inclusion of Evans Lake on DEC's list of impaired waters required a total maximum daily load of phosphorous and that DEC had yet to develop the amount of that load as of the date of his affidavit. Further[*3], Draganchuk noted that, despite upgrades to the LSWTP in 2019 that had improved phosphorous removal, there had been harmful algae blooms present every year from 2015 through 2021, which encompassed two post-improvement summers. Further, the record establishes, and there is no dispute, that there were various exceedances for phosphorous discharge as permitted by the SPDES permit following the LSWTP upgrade. However, the chief operator of defendant's Wastewater Department explained that two of the four phosphorous-related exceedances were precipitated by either a pump setting error or malfunction and the other two were likely attributable to unusually large concentrations of phosphorous in the inflow to the LSWTP. Moreover, the record contains factual support for the premise that, since the LSWTP underwent significant and expensive upgrades, there had been an overall reduction in phosphorous discharge in line with the amounts articulated in the SPDES permit. Viewing the evidence in the light most favorable to the nonmovant, as we must, we find that the record reveals "conflicting proof as to the substantiality and unreasonableness of defendant['s] alleged interference with plaintiffs' use and enjoyment of their property" (Schillaci v Sarris, 122 AD3d at 1088; see Parris-Kofi v Redneck, Inc., 204 AD3d 1180, 1181 [3d Dept 2022]; see also Burdick v Tonoga, Inc., 191 AD3d 1220, 1224 [3d Dept 2021]).
We also find that there are triable issues pertaining to causation. The two separate affidavits from David Matthews, a certified lake manager, note that Evans Lake was hypereutrophic at the time that DEC had sampled the lake in 2015, and that the availability of phosphorous, "a key determinant of algal growth," had created "the potential for [harmful algae blooms]" that were present on Evans Lake during the relevant time period. Matthews further opined that neither defendant nor DEC "ha[d] produced sufficient data to quantify phosphorous loading to [Evans] Lake from any source other than the LSWTP" and that the SPDES permit allowances for phosphorous were exceeding the assimilative capacity of the lake. Ultimately, Matthews, in line with the conclusion of Draganchuk and Michael Martin, also a certified lake manager, concluded that the discharge limits prescribed by DEC in the SPDES permit did not adequately protect the water quality in Evans Lake. Accordingly, Matthews opined that "the LSWTP is a substantial contributing cause of the impaired water quality of" the lake, including the harmful algae blooms that impaired the lake's designated best uses.
In contrast, the deposition testimony from DEC officials indicated that there were various other sources of phosphorous that were contributing to the levels present in Evans Lake at the time that the SPDES permit was issued, including internal loading as well as agricultural or storm runoff. As noted in DEC's designation on the impaired waters list, the LSWTP, "when operating at its effluent limits (which have [*4]been exceeded in the past), is contributing up to 60% of the annual phosphorous load to the lake" and that other sources, beyond sediment loading from past operation of the LSWTP, included septic systems and runoff from developed land. Consistent with those assertions, the testimony from a DEC official indicated that DEC had not made any determination as to the cause of harmful algae blooms in Evans Lake, further noting that high levels of phosphorous are "very highly correlated" with harmful algae blooms, "but it[ is] not absolute causation." Relatedly, the affidavit of George Knoecklein, a limnologist, concluded that the exceedances in the relevant time period were not "of such amount or such quality as would be expected to produce any significant adverse impacts on water quality in Evans Lake." Noting that plaintiffs had commissioned a study from Martin that concluded, in part, that eliminating the LSWTP, would reduce the phosphorous level by about 50% in Evans Lake, Knoecklein further opined that the lake "would still be eutrophic regardless of inflow from the LSWTP."[FN5] Altogether, we find that the foregoing proof establishes that there are triable issues pertaining to causation that warrant denial of plaintiff's cross-motion on the private nuisance claim (see Pilatich v Town of New Baltimore, 133 AD3d 1143, 1145 [3d Dept 2015]; see also Burdick v Tonoga, Inc., 191 AD3d at 1224).
Similarly, plaintiffs did not establish the absence of any material issue of fact on their trespass claim. "The essence of trespass is the invasion of a person's interest in the exclusive possession of land. Accordingly, an action for trespass over the lands of one property owner may not be maintained where the purported trespasser has acquired an easement of way over the land in question" (Patel v Garden Homes Mgt. Corp., 156 AD3d 807, 809 [2d Dept 2017] [internal quotation marks and citations omitted]). As relevant here, a party seeking to establish a prescriptive easement "must show that its use of the property was open, notorious, continuous, hostile and under a claim of right for the requisite 10-year period" (JMMJ Dev., LLC v Town of Greenport, 222 AD3d 1281, 1283 [3d Dept 2023] [internal quotation marks and citations omitted]; see Sardino v Scholet Family Trust, 192 AD3d 1433, 1435 [3d Dept 2021]). Defendant's proof established that the LSWTP had been discharging effluent into Evans Lake since at least 1984 and there is sufficient proof that they had done so under a claim of right. To the extent that plaintiffs focus on the enlargement of the LSWTP's discharge limits since that time, we find that "the record demonstrates triable issues of fact as to the extent of the actual use" and whether the use exceeded the bounds of the claimed prescriptive easement, were it found to exist (Daniello v Wagner, 221 AD3d 956, 960 [2d Dept 2023]; see Patel v Garden Homes Mgt. Corp., 156 AD3d at 809; Torre v Meade, 226 AD2d 447, 447 [2d Dept 1996], lv denied 88 NY2d 813 [1996]).[FN6][*5]
Finally, we find that Supreme Court properly dismissed plaintiff's cause of action asserting that defendant was strictly liable for the operation of the LSWTP. In assessing whether an activity is abnormally dangerous or ultrahazardous, we look at the following six criteria to guide the inquiry: "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes" (Doundoulakis v Town of Hempstead, 42 NY2d 440, 448 [1977] [internal quotation marks and citation omitted]; accord Searle v Suburban Propane Div. of Quantum Chem. Corp., 263 AD2d 335, 339 [3d Dept 2000]). Plaintiffs mistakenly focus on the release of phosphorous into Evans Lake rather than the activity that entails doing so; specifically, the operation of a wastewater treatment plant. In light of the common usage and value to the community from such an operation, as well as the ability to eliminate the risk with the exercise of reasonable care, we find no viable cause of action for strict liability resulting therefrom (see Searle v Suburban Propane Div. of Quantum Chem. Corp., 263 AD2d at 339; DeFoe Corp. v Semi-Alloys, Inc., 156 AD2d 634, 635-636 [2d Dept 1989]).
Egan Jr., J.P., Aarons, Pritzker and Lynch, JJ., concur.
ORDERED that the order is affirmed, with costs to abide the event.

Footnotes

Footnote 1: Pere, Brandler, Coates, Lerman and Farkas subsequently moved for class certification, and that motion was granted as part of the order on appeal.

Footnote 2: The parties have advised us that a trial was completed in this matter in August 2022. However, despite the lengthy passage of time since the conclusion of trial, Supreme Court has yet to render a final judgment, thus permitting this appeal from an interlocutory order (see CPLR 5501 [a] [1]; Matter of Cartwright v Kennedy, 230 AD3d 969, 970 n 1 [3d Dept 2024], appeal dismissed & lv denied 42 NY3d 943 [2024]).
Footnote 3: Plaintiffs' notice of appeal is limited to those parts of Supreme Court's order that 1) granted defendant's motion for summary judgment on strict liability, 2) denied plaintiffs' cross-motion for summary judgment on the trespass and private nuisance claims and 3) denied plaintiffs' motion to strike defendant's expert. Accordingly, any arguments by plaintiffs directed at the denial of their motion seeking summary judgment on their negligence claim are not properly before us (see Matter of 61 Crown St., LLC v City of Kingston Common Council, 217 AD3d 1144, 1145 [3d Dept 2023]).

Footnote 4: The impairment is considered relative to DEC's designated use for the waterbody at issue. In this case, the record establishes that Evans Lake is a class B waterbody, "suitable for public bathing, general recreation use and support of aquatic life, but not as a water supply" (see 6 NYCRR 701.7).

Footnote 5: We find no merit to plaintiffs' contention that Supreme Court should have struck, and consequently given no consideration to, Knoecklein's affidavit. Plaintiffs' reliance on cases that address preclusion of expert testimony at trial is inapposite, as such authority does not directly foreclose consideration of expert proof on a summary judgment motion. Rather, plaintiffs' contentions, if afforded the benefit of a liberal reading, essentially posit that Knoecklein's affidavit is conclusory and speculative (see generally Schwenzfeier v St. Peter's Health Partners, 213 AD3d 1077, 1080 [3d Dept 2023]). However, even affording plaintiffs with the benefit of such a reading, we find it unavailing, as Knoecklin's affidavit, though terse, appropriately relies on facts in the record and, to the extent that he referenced evidence that could be characterized as hearsay, such proof did not form the sole basis for his opinion (see Kendall v Amica Mut. Ins. Co., 135 AD3d 1202, 1206-1207 [3d Dept 2016]; compare Delosh v Amyot, 186 AD3d 1793, 1796 [3d Dept 2020]).

Footnote 6: We find no merit to plaintiffs' assertion that Supreme Court's prior statement in a discovery conference precluded defendant from asserting the defense that it possessed a prescriptive easement to discharge effluent into Evans Lake.