**MERRICK GABLES ASSOCIATION, INC., John Stadlmeyer, Nikolaos Takmopoulos, Dorothy Kravitz, Plaintiffs,**

v.

**The TOWN OF HEMPSTEAD, NextG Networks, Inc., NextG Networks of NY, Inc., Metro PCS Corp., Metro PCS Wireless, Inc., Metro PCS 144, Inc., Defendants.**

No. 09–CV–4415 (ADS)(WDW).

United States District Court, E.D. New York.

March 10, 2010.

356

Glenn L. Stephenson P.C., Seaford, NY, for Plaintiffs.

Berkman, Henoch, Peterson & Peddy PC, by Leslie R. Bennett, Esq., of counsel, Garden City, NY, for Town of Hempstead.

Davis, Wright & Tremaine, by Lacy H. Koonce, Esq., Leslie G. Moylan, Esq., T. Scott Thompson, Esq., Victor Day Hendrickson, Esq., of counsel, New York, NY, for NextG Networks, Inc. and NextG Networks of NY, Inc.

Cuddy & Feder LLP, by Andrew P. Schriever, Esq., of counsel, White Plains, NY, for Metro PCS Corp., Metro PCS Wireless, Inc. and Metro PCS 144, Inc.

### *MEMORANDUM OF DECISION AND ORDER*

SPATT, District Judge.

This lawsuit was brought by a homeowners' association and several residents of Merrick, New York, against the Town of Hempstead ("Hempstead"), NextG Networks, Inc., NextG Networks of NY, Inc. ("NextG"), Metro PCS Corp., Metro PCS Wireless, Inc. and Metro PCS 144, Inc. ("Metro PCS") (collectively "the Defendants"). The Plaintiffs' amended complaint asserts causes of action for an unconstitutional taking, fraud, breach of contract, negligence, and private nuisance. These claims stem from NextG's installation of wireless communications equipment on utility poles in Hempstead.

The Defendants have moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the amended complaint in its entirety. For the reasons that follow, the Defendants' motion is granted.

## I. BACKGROUND

Plaintiffs John Stadlmeyer, Nikolaos Takmopoulous, and Dorothy Kravitz all own real property in Merrick, a town within Hempstead. Plaintiff Merrick Gables Association ("Merrick Gables") is a New York corporation that represents the Plaintiffs and other homeowners in Merrick. NextG builds, operates and manages networks designed to improve wireless communication. To that end, NextG provides a service known as Radio Frequency Transport ("RF Transport"). NextG uses RF Transport to transmit the communications signals of wireless service providers. Metro PCS, a service provider, is NextG's customer in Hempstead.

RF Transport is accomplished through a Distributed Antenna System ("DAS"), a fiber optic network that connects a series of small antennas and other pieces of equipment that are located on utility poles. On July 7, 2009, NextG entered into a Right of Way License Agreement with Hempstead that authorized NextG to install and operate a DAS network on utility poles within the town.

Although the amended complaint is not a model of clarity, the gravaman of the Plaintiffs' lawsuit is that the value of their property has been diminished due to the public perception that exposure to the equipment installed by NextG carries certain health risks. The Plaintiffs' amended complaint asserts causes of action for an unconstitutional taking, fraud, breach of contract, negligence, and private nuisance. The Defendants have offered a variety of arguments in support of their motion to dismiss the amended complaint. The

Court will address each of these arguments in turn.

## II. DISCUSSION

### A. Standard—Fed.R.Civ.P. 12(b)(6)

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills*, 572 F.3d 66 (2d Cir.2009) (citing *Ashcroft v. Iqbal*, —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 129 S.Ct. at 1950.

### B. Whether There Has Been an Unconstitutional Taking

The Plaintiffs contend that NextG's installation of wireless service equipment on utility poles next to their homes has re-

duced the value of their properties because of the perceived health risks of RF emissions. The Plaintiffs allege that in permitting NextG to install this equipment, Hempstead has effected a regulatory taking of their property in violation of the Fifth and Fourteenth Amendments to the Constitution.

■ The Takings Clause of the Fifth Amendment provides that no "private property shall be taken for public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment's prohibitions are applicable to the states through the Fourteenth Amendment. *See Kelo v. New London*, 545 U.S. 469, 125 S.Ct. 2655, 2658 n. 1, 162 L.Ed.2d 439 (2005). "The law recognizes two species of takings: physical takings and regulatory takings." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir.2006) (citing *Meriden Trust & Safe Deposit Co. v. FDIC*, 62 F.3d 449, 454 (2d Cir.1995)). "Physical takings . . . occur when the government physically takes possession of an interest in property for some public purpose." *Id.* (citing *Tahoe–Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002)). Regulatory takings, on the other hand, do not involve "a categorical assumption of property," by the Government. *Id.* (citing *Tahoe–Sierra Pres. Council*, 535 U.S. at 323, 122 S.Ct. 1465). "The gravamen of a regulatory taking claim is that [a] state regulation goes too far and in essence 'effects a taking.' " *Id.* (quoting *Meriden Trust & Safe Deposit Co.*, 62 F.3d at 454).

### 1. Hempstead

■ Here, it is clear that no governmental regulation has denied the Plaintiffs all economically beneficial and productive uses of their land. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). The

Plaintiffs' position is that the perceived health risks of RF emissions have *reduced* the value of their property. However, the Supreme Court has held that a governmental regulation that simply causes a diminution in property values does not, standing alone, provide the basis for a regulatory takings claim. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124–25, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (observing that a diminution in property value, standing alone, does not establish a taking); *Howell v. Apple, Inc.*, No. 89–CV–1574, 1991 WL 66366, at * 2 (Apr. 24, 1991) (finding that no taking occurred where the plaintiffs alleged that their property values were diminished by the city's decision to construct a mental health center in their community).

Nevertheless, the Plaintiffs contend that a decision of the New York Court of Appeals, *Criscuola v. Power Auth. of State of New York*, 81 N.Y.2d 649, 602 N.Y.S.2d 588, 621 N.E.2d 1195 (1993), can be read to endorse the view that a plaintiff may recover for a regulatory taking where the plaintiff can show that the public's perception of a hazard on their property has caused a reduction in the property's value. However, a careful reading of the New York Court of Appeals' decision in *Criscuola*, and the Third Department's decision below, 188 A.D.2d 951, 592 N.Y.S.2d 79 (1992), reveals that the case is inapplicable here.

In *Criscuola*, the Power Authority of New York acquired two easements over the plaintiffs' property for the purpose of constructing high-voltage power lines. *Criscuola*, 188 A.D.2d at 952, 592 N.Y.S.2d 79. The property owners then sought direct and consequential damages for what was concededly a taking. *Id.* After a trial, the property owners were awarded $5,943 in direct damages but no award was made for consequential damages. *Id.* The Ap-

pellate Division, Third Department, affirmed the trial court's award. *Id.*

The sole issue presented to the New York Court of Appeals was whether the property owners were required to show the reasonableness of the public's fear concerning high voltage towers in order to recover consequential damages for the taking. *Id.* at 651, 621 N.E.2d 1195. The Court determined that the property owners could recover consequential damages without demonstrating the reasonableness of the public's perception of the health risks associated with high-voltage power lines. *Id.* at 652–53, 621 N.E.2d 1195.

■ The critical difference between this case and *Criscuola* is that in the latter, the property owners claimed that the installation of high-voltage power lines rendered their land *valueless.* *Id.* at 652, 621 N.E.2d 1195; *Criscuola,* 188 A.D.2d at 952, 592 N.Y.S.2d 79. Here, the Plaintiffs argue that the market's perception of the health risks associated with the equipment installed by NextG has reduced the value of their property. As noted above, in contrast to cases where a property owner shows that a regulation will deprive him of *all* economically beneficial uses of his land, *Lucas,* 505 U.S. at 1019, 112 S.Ct. 2886, a mere reduction in property value will not suffice to show that a governmental entity has effected a taking. *Penn Cent. Transp. Co.,* 438 U.S. at 124–25, 98 S.Ct. 2646. Accordingly, the Plaintiffs' taking claim is dismissed as against Hempstead.

### 2. NextG and Metro PCS

■ It is not clear to the Court, or to the Defendants for that matter, whether the Plaintiffs have asserted a taking claim against NextG and Metro PCS. In any event, it is black-letter law that a property owner may only pursue a taking claim against a governmental entity. *See Black's Law Dictionary* 1591 (9th ed.

2009) (explaining that there is a "taking of property when *Government* action directly interferes with or substantially disturbs the owner's use and enjoyment of the property.") (emphasis added). Accordingly, the Plaintiffs' taking claim must be dismissed as against NextG and Metro PCS.

### C. Fraud

The Plaintiffs allege that: (1) the Defendants fraudulently misrepresented that the Plaintiffs' rights under O.R.S. § 758.225 were preempted by the Federal Telecommunications Act of 1996 ("FTA"), Pub.L. No. 104–104, 110 Stat. 56; and (2) Hempstead fraudulently misrepresented that it would enact and enforce a moratorium on the installation of wireless service equipment.

■■ Under New York law, a plaintiff alleging fraud must show five elements by clear and convincing evidence: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.,* 443 F.3d 230, 234 (2d Cir.2006). Allegations of fraud must meet the requirements of Fed. R.Civ.P. 9(b). The heightened pleading standard contained in Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). "To state a claim with the required particularity, a complaint 'must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Stevelman v. Alias Research Inc.,* 174 F.3d 79, 84 (2d Cir.1999) (quoting *Aci-*

*to v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995)).

■ Here, it is clear that the vague allegations relating to both misrepresentations fall well short of meeting 9(b)'s particularity requirements. The amended complaint provides no information concerning who made the alleged misrepresentations and does not indicate where and when the statements were made. Ordinarily, the Court would consider granting the Plaintiffs leave to amend their complaint a second time in order to amplify this claim. However, in this case, granting leave to amend would be futile because the Plaintiffs' putative fraud claims would never survive a motion to dismiss. *See Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir.2002) (finding that leave to amend need not be granted where the proposed amended claim would not survive a 12(b)(6) motion to dismiss).

■ The amended complaint alleges that New York has enacted O.R.S. § 758.225, which "provides a specific procedure for reviewing and compensating landowners from [sic] the resultant conversion of property values as a result of utility installations overhead." Am. Compl. ¶ 21. The amended complaint further alleges that the Defendants misrepresented—apparently to them—that the FTA preempted any rights the Plaintiffs enjoyed under O.R.S. § 758.225. The problem with this allegation—as the Plaintiffs now acknowledge—is that O.R.S. § 758.225 is actually an Oregon statute. Of course, as New York residents, the Plaintiffs cannot avail themselves of any rights conferred by an Oregon statute. Under the circumstances, the Court is unable to perceive—and the Plaintiffs make no effort to explain—how this alleged misrepresentation could possibly be material. As this is the only alleged misrepresentation on the part of NextG and Metro PCS, the Plaintiffs'

fraud claim must be dismissed as against both of these companies.

■ Turning to the second purported misrepresentation, even if the Plaintiffs had properly alleged that Hempstead assured them it would enact a moratorium on the installation of wireless service equipment, the Plaintiffs' reliance on such a representation would not have been reasonable because the FTA clearly prohibits such a moratorium. The FTA prohibits state and local governments from regulating the placement of wireless service equipment based on concerns about the environmental effects of RF emissions. *See* 47 U.S.C. § 332(c)(7)(B)(iv) ("Section 332"). The FTA provides in pertinent part that:

> [n]o State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

*Id.* The Federal Communications Commission has interpreted Section 332 to mean that "State and local governments are *broadly preempted* from regulating the operation of personal wireless service facilities based on RF emissions considerations." *In re Procedures for Reviewing Requests for Relief from State and Local Regulations Pursuant to Section 332(c)(7)(b)(V) of Communications Act of 1934*, 2000 WL 1715846, 15 F.C.C.R. 22,821 (November 17, 2000). The Plaintiffs claim that Section 332 and its regulations do not squarely address the issue of whether a state or local government may consider the *perceived risks* of RF emissions in regulating the location of wireless service equipment. Not surprisingly, the Second Cir-

cuit does not share the Plaintiffs' narrow reading of Section 332. In *Cellular Phone Taskforce v. F.C.C.,* 205 F.3d 82, 88 (2d Cir.2000), the Second Circuit found that it was reasonable for the FCC to interpret Section 332 to prohibit "state and local governments from regulating any personal wireless service facilities *based upon perceived health risks* posed by RF emissions as long as the facilities conformed to the FCC Guidelines regarding such emissions." (emphasis added).

The FTA clearly prohibits Hempstead from preventing the installation of wireless service equipment based on concerns about the health risks associated with the equipment. Under the circumstances, it was not reasonable for the Plaintiffs to rely upon Hempstead's alleged representation that it would enact what would have amounted to an unlawful moratorium. *See Sprint Spectrum L.P. v. Town of Farmington,* No. 97–CV–864, 1997 WL 631104, at * 5–6 (D.Conn.1997) (finding that a nine month moratorium on the construction of wireless communications equipment that was enacted in part due to concerns about the effects that radio frequency emissions would have on property values, violated the FTA). As the Plaintiffs are unable to establish the reasonable reliance element, the Plaintiffs' fraud claims must be dismissed as against Hempstead.

## D. Breach of Contract

As noted above, the Plaintiffs allege that Hempstead agreed to place a moratorium on the installation of wireless service equipment within the town. The Plaintiffs contend that in failing to do so, Hempstead committed a breach of contract. In New York, to establish a claim for breach of contract, a plaintiff must prove the following elements: (1) the existence of a contract; (2) plaintiff's performance of the contract; (3) defendant's

breach of the contract; and (4) damages suffered as a result of the breach. *Terwilliger v. Terwilliger,* 206 F.3d 240, 245–46 (2d Cir.2000).

Here, the Plaintiffs have failed to show the existence of a valid contract. As a threshold matter, there is no reference to any written agreement between the parties. Even if there was a written agreement relating to the purported moratorium, it would be unenforceable because, as the Court has already discussed, such a moratorium would run afoul of the FTA. *See* 47 U.S.C. § 332(c)(7)(B)(iv). Moreover, even if the Plaintiffs had alleged an oral agreement, N.Y. Town Law § 64(6) requires all contracts entered into by a town to be executed by the town supervisor and approved by the town board. N.Y. Town Law § 64(6). Here, there is no indication that the alleged agreement was ever approved by the Hempstead supervisor or ratified by the Hempstead Board. Accordingly, in the absence of a valid and enforceable agreement, the Plaintiffs' breach of contract claim must be dismissed.

## E. Negligence

The Plaintiffs allege that Hempstead breached two independent duties in allowing NextG to install the wireless service equipment on town utility poles. In particular, the Plaintiffs contend that Hempstead breached: (1) a duty imposed by the FTA "to manage the installation of personal wireless service facilities"; and (2) its generalized duty to protect "land owners from outside corporate interference that reduces" the value of their property. Am. Compl. ¶¶ 30–31.

"To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately

resulting therefrom.'" *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York,* 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294, 1294, 499 N.Y.S.2d 392, 392 (1985)). Although a plaintiff must establish each of these discrete elements, "[t]he threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff?" *Hamilton v. Beretta U.S.A. Corp.,* 96 N.Y.2d 222, 232, 750 N.E.2d 1055, 727 N.Y.S.2d 7 (2001). In order to demonstrate this threshold element, "[t]he injured party must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for '[w]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.'" *Id.* (quoting *Lauer v. City of New York,* 95 N.Y.2d 95, 100, 711 N.Y.S.2d 112, 733 N.E.2d 184 (2000)). Here, the Plaintiffs are unable to make this threshold showing.

■ The FTA imposes no duty upon state and local governments to "manage the installation of personal wireless service facilities". Am. Compl. ¶ 30. *See Cablevision of Boston, Inc. v. Public Improvement Com'n of City of Boston,* 184 F.3d 88, 104–05 (1st Cir.1999) (rejecting the argument that the FTA imposes such an obligation). Nor does the common law impose a generalized duty upon Hempstead to protect residents against "corporate interference" that effectively reduces the value of their property. Accordingly, having failed to establish that Hempstead owed them any cognizable legal duty, the Plaintiffs' negligence claims must be dismissed.

## F. Nuisance

The Plaintiffs claim that, "without any permit process or due process review," Hempstead permitted NextG to install equipment that has caused them anxiety and reduced the value of their properties. Am Compl. ¶ 35. The New York Court of Appeals has aptly observed that the legal concept of a nuisance presents one of the more "impenetrable jungle[s]" in the entire law. *Copart Indus., Inc. v. Consol., Edison Co. of N.Y.,* 41 N.Y.2d 564, 565, 394 N.Y.S.2d 169, 362 N.E.2d 968, 971 (1977). However, a close reading of *Copart,* the leading New York Court of Appeals case, provides guidance through the decisional thicket.

■ "A private nuisance threatens one person or a relatively few, an essential feature being an interference with the use or enjoyment of land." *Copart,* 41 N.Y.2d at 568, 394 N.Y.S.2d 169, 362 N.E.2d 968 (citations omitted). In New York, there are several ways a defendant may be subject to liability for creating a private nuisance. A private nuisance may arise from some negligence or recklessness on the defendant's part or may arise from the defendant's creation of an abnormally dangerous or ultrahazardous condition. *Id.* at 569, 394 N.Y.S.2d 169, 362 N.E.2d 968. However, neither of these bases for asserting a private nuisance claim are applicable here.

First, as the Court has already observed, the Plaintiffs have failed to properly allege negligence on the part of Hempstead as they are unable to identify any cognizable legal duty that the town has breached in allowing NextG to install wireless equipment. Second, the Plaintiff do not and cannot allege that wireless telephone equipment presents an abnormally dangerous or ultrahazardous condition.

■ Whether a condition qualifies as abnormally dangerous or ultrahazardous turns on six factors: "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) like-

lihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes." Restatement (Second) of Torts § 520 (1977); *see Doundoulakis v. Town of Hempstead,* 42 N.Y.2d 440, 398 N.Y.S.2d 401, 368 N.E.2d 24, 27 (1977) (looking to the Restatement (Second) of Torts to determine whether a condition was abnormally dangerous or ultrahazardous); *Abbatiello v. Monsanto Co.,* 522 F.Supp.2d 524, 531 (S.D.N.Y.2007) (same). Ultimately, "[i]t is for the court to decide whether an activity of a landowner is abnormally dangerous ..." *Mayore Estates, LLC v. Port Auth. of N.Y. & N.J.,* No. 02 Civ. 7198, 2003 WL 22232918, at *2 (S.D.N.Y. Sept. 26, 2003).

■ In view of the widespread use of wireless telephone equipment in public rights of way and the importance of installing this equipment in proximity to cellular telephone users, the Court finds that this equipment does not present an abnormally dangerous or ultrahazardous condition. Apparently, this is also the conclusion that Congress has reached. As the Court has already observed, the FTA prevents state and local governments from regulating the placement of this equipment based on perceived fears about the health risks of radio frequency emissions. *See* 47 U.S.C. § 332(c)(7)(B)(iv). To hold that radio frequency emissions create an abnormally dangerous or ultrahazardous condition would therefore be inconsistent with federal law.

Still, a defendant "may be liable for a private nuisance where the wrongful invasion of the use and enjoyment of another's land is intentional and unreasonable." *Id.*

at 570, 394 N.Y.S.2d 169, 362 N.E.2d 968. However, the fundamental defect in the Plaintiffs' private nuisance claim is that Hempstead did not create the offending condition. The equipment that the Plaintiffs claim has caused them anxiety and diminished the value of their property was installed by NextG, not Hempstead. Under the circumstances, Hempstead cannot be said to have unreasonably interfered with the Plaintiffs' use and enjoyment of their land. Accordingly, the Plaintiffs' private nuisance claim is dismissed.

The Court notes that the Plaintiffs have not asserted a private nuisance claim against NextG or Metro PCS. If they had asserted such a claim against Metro PCS, it would suffer from the same problem as their claim against Hempstead: Metro PCS was not responsible for the condition they allege is a nuisance. Any putative nuisance claim against NextG would suffer from a distinct, though still fatal problem.

■ Even assuming that the wireless equipment interferes to some degree with their use and enjoyment of their land, the Plaintiffs would still be unable to show that NextG's interference was wrongful or unreasonable. One of the objectives of the FTA was to create a national framework to accelerate the deployment of wireless telecommunications technology. *AT & T Wireless PCS, Inc. v. City Council of City of Virginia Beach,* 979 F.Supp. 416, 424–25 (E.D.Va.1997). As the Court has already explained, the FTA "does so in part by placing certain substantive and procedural limitations upon the authority of local bodies to regulate and limit the construction of facilities for wireless communication services." *Virginia Metronet, Inc. v. Board of Sup'rs of James City County, Va.,* 984 F.Supp. 966, 970 (E.D.Va.1998) (citing *AT & T,* 979 F.Supp. at 424–25). In the Court's view, it would be inconsistent with the FTA to subject NextG to liability for

creating a private nuisance by installing wireless equipment that Congress has sought to promote.

## III. CONCLUSION

The Defendants' motion to dismiss the amended complaint is granted. The Clerk of the Court is directed to close this case.

**SO ORDERED.**