OPINION OF THE COURT
O. Peter Sherwood, J.
This is an action brought to have a cell phone tower adjudged a common-law nuisance and removed from the rooftop of a building owned by defendant Amalithone Realty, Inc. The building is located near the residential property where plaintiffs reside. Defendant Amalgamated Lithographers of America, Local One, a union, leases the building in question as its headquarters. The action sounds in nuisance, trespass, and related torts for alleged injuries to plaintiffs’ persons and plaintiffs’ rights to enjoy their home.
Before the court is defendants’ motion to dismiss the complaint, pursuant to CPLR 3211 (a) (2), (7) and (10), arguing that: (1) plaintiffs’ claims are preempted by federal law; (2) plaintiffs have failed to join a necessary and indispensable party to this action under CPLR 1003; and (3) the complaint fails to state any cause of action upon which relief can be granted.
For the reasons that follow, defendants’ motion to dismiss the complaint is granted in its entirety.
*997 Background
On this motion to dismiss the facts alleged are taken from the complaint and are assumed to be true. Defendant Amalithone Realty, Inc. is the record owner of the commercial property, and the building situated thereon that is located at 113-115 University Place, New York, New York. The building’s rooftop was leased to AT & T Wireless Services Inc., a wireless carrier, for the installation of a cell phone tower, consisting of wireless communication antennas and a cabinet to house other electronic equipment. It is unclear from the pleadings when the rooftop was leased or licensed, and which of the two defendants actually signed the lease or license with AT & T.
Plaintiffs Susan Scott Stanley, Michael C. Stanley and their minor son reside at a condominium apartment located at 35 East 12th Street, New York, New York. The apartment building is in close proximity to the building where the cell phone tower and wireless transmission antennas are located. Plaintiffs began occupying their apartment in or about April 2007. Shortly after moving into the apartment, members of the Stanley family began to experience headaches, nosebleeds, fatigue, disturbed sleep, anxiety and other physical and mental ailments.
In 2008, the Stanley family hired a consultant who specializes in environmental assessments to investigate the cause of their health problems. A year later, in 2009, the family hired an electrical engineer to measure the radio frequency radiation inside the apartment. Both consultants found high levels of radio frequency (RF) radiation inside plaintiffs’ apartment. Plaintiffs ascribe the emissions to defendants based on the fact that the nearest cell transmission antennas to their apartment are located on the roof of the building owned by Amalithone.
RF emissions are a form of electromagnetic radiation that have separate electric and magnetic components which are linked together, and travel as a wave at a frequency which is expressed in hertz (Hz). Higher frequencies are described in terms of kilohertz (KHz or 1,000 Hz), megahertz (MHZ or one million Hz ) or gigahertz (Ghz or one billion Hz) (see J.H. Snider, Citizen’s Guide to the Airwaves, at 8, available at www.newamerica.net/files/airwaves.pdf [accessed Mar. 2, 2011]). Most wireless technology operates at the 800 to 900 MHZ or 1,850 to 1,990 MHZ frequencies. These frequencies are in the microwave spectrum or radio-frequency range (id.).
Before commencing this litigation, on or about November 2 and December 2, 2009, plaintiffs’ counsel, via letter, requested *998 removal of the rooftop cell tower. In response, Michael Minieri, the property building manager, delivered to plaintiffs’ counsel a copy of an AT & T Mobility RF Safety Compliance Certification (the Compliance Certification), dated June 5, 2009, to establish that the wireless transmission antennas meet Federal Communications Commission (FCC) guidelines for RF transmissions.
In their verified complaint, filed on March 16, 2010, plaintiffs alleged 14 causes of action, including intentional private and negligent private nuisance, trespass, unlawful taking, misrepresentation and deceit, prima facie tort, strict liability, assault and battery, vicarious liability, and punitive damages. Plaintiffs contend that they are not seeking to have the court regulate RF emissions. Instead, plaintiffs seek an injunction removing the antennas and money damages for injuries resulting from defendants’ decision to lease its rooftop for transmitter use. Plaintiffs also seek a declaratory judgment, pursuant to CPLR 3001, that the hazardous and unsafe operation of the cell antennas, licensed by the FCC, a federal agency, deprives them of substantive due process and their federal and state constitutional rights.
Defendants seek dismissal of the entire complaint.
Discussion
Rather than addressing those portions of defendants’ motion to dismiss based on federal preemption grounds, the court will focus on: (1) whether all necessary and indispensable parties to this action are joined; and (2) whether plaintiffs have failed to state a cause of action. For even if a viable claims otherwise exists, it is clear that plaintiffs’ claims are barred on these grounds.
A. Procedural Considerations: Necessary and Proper Parties
Nonjoinder of a party who should be joined under CPLR 1001 is a ground for dismissal of an action without prejudice (see CPLR 1003). Under CPLR 1001 (a), a necessary party is one whose nonjoinder will jeopardize the outcome of the action in either of two ways: (1) “complete relief’ cannot be accorded the existing parties to the action; or (2) the absentee might be “inequitably affected” by the judgment. If a person’s absence would lead to either result, the statute declares the person to be a “[p]art[y] who should be joined.”
Typically, those owning or holding interests in real property are necessary parties to a nuisance action affecting the property *999 or to a proceeding to restrict its use (see Java Lake Colony, Inc. v Institute of Sisters of St. Joseph of Diocese of Buffalo, 262 App Div 808 [4th Dept 1941]). In Incorporated Vil. of Atl. Beach v Pebble Cove Homeowner’s Assn. (139 AD2d 627 [2d Dept 1988]), a village brought an action against a homeowners’ association to enjoin an alleged nuisance, namely, drainage of water on village streets emanating from the heating and air-conditioning systems used in a condominium development. The Appellate Division, Second Department, ruled that the owners of the individual units in the development were necessary parties in light of the relief sought by the village, which was an injunction preventing the unit owners from using their individually controlled heating and air-conditioning systems (see also Matter of New York City Audubon Socy. v New York State Dept. of Envtl. Conservation, 262 AD2d 324 [2d Dept 1999] [holding that an entity to which a tidal wetlands permit was issued was a necessary party to a proceeding seeking the revocation of that permit]). In contrast, persons who are unable to claim legitimately any interest in real estate which is the subject of litigation are not necessary parties (see e.g. Brothers v Wall, 84 AD2d 923 [4th Dept 1981]).
Issues involving necessary parties often arise in cases concerning property ownership, contract rights and government regulatory matters (see City of New York v Long Is. Airports Limousine Serv. Corp., 48 NY2d 469 [1979] [holding that action by city to enjoin operation of omnibus route had to be dismissed for failure to join the Commissioner of Transportation]; Matter of Llana v Town of Pittstown, 245 AD2d 968 [3d Dept 1997] [holding that property owners who had received subdivision approval under a town subdivision law were necessary parties to a proceeding challenging that law]; Matter of Baker v Town of Roxbury, 220 AD2d 961 [3d Dept 1995] [holding that the owner of a parcel of land, who received a town permit to use it as a junkyard, was a necessary party to a proceeding to annul a negative declaration issued under the state Environmental Conservation Law and to set aside issuance of the permit]).
In the present case, plaintiffs did not join AT & T, the wireless carrier, as a party to this action. AT & T as the omitted party would be inequitably affected by a judgment in this action and therefore it is a necessary party (see Matter of 27th St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d 155 [1st Dept 2002]). A determination that the wireless carrier is a necessary party does not necessarily mandate dismissal. Rather, *1000 the court must consider whether the action can proceed without that party. A party who must be joined lest the action be dismissed is termed an “indispensable party.”
There are two principal reasons for requiring dismissal of the complaint owing to the absence of an indispensable party. First, mandatory joinder prevents multiple and inconsistent judgments relating to the same controversy. Second, joinder protects the absent party who would be “embarrassed by judgments purporting to bind their rights or interests where they had no opportunity to be heard” (Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 820 [2003], quoting First Natl. Bank of Amsterdam v Shuler, 153 NY 163, 170 [1897] [citation omitted]).
In determining whether the wireless carrier is an indispensable party, the court must consider five factors set out in CPLR 1001 (b):
“1. whether the plaintiff has another effective remedy in case the action is dismissed on account of the nonjoinder;
“2. the prejudice which may accrue from the nonjoinder to the defendant or to the person not joined;
“3. whether and by whom prejudice might have been avoided or may in the future be avoided;
“4. the feasibility of a protective provision by order of the court or in the judgment; and
“5. whether an effective judgment may be rendered in the absence of the person who is not joined.”
Applying these five factors, the court finds that the equities favor dismissal of the complaint. Specifically, the second and third factors strongly cut against plaintiffs.
No principle is more deeply embedded in the common law than that, in an action to set aside a contract or a lease, all parties who may be affected by the determination are indispensable (see Crouse-Hinds Co. v InterNorth, Inc., 634 F2d 690, 701 [2d Cir 1980], citing Lomayaktewa v Hathaway, 520 F2d 1324, 1325 [9th Cir 1975], cert denied sub nom. Susenkewa v Kleppe, 425 US 903 [1976]). While this court’s sweeping declaration has its limitations, this core principle applies here. Defendants have a subordinate interest in the operation of the cell phone tower. Significantly, the ultimate relief sought is removal of the antennas, a process to which only the wireless carrier can respond, regardless of defendants’ presence in this proceeding. As the *1001 sponsor, owner of the subject cell tower and party to the contract with defendants, the wireless carrier clearly has an important interest in this litigation and will be adversely affected if the relief requested is granted. Those interests would not be adequately protected by the two defendants. The wireless carrier and the defendants are not united in interest, nor are they vicariously liable for the acts of the other.
The Stanley family is seeking a determination that, in effect, would impose more stringent requirements than those imposed by the FCC. Relief on plaintiffs’ causes of action would render ineffective the leasing or licensing contract between the wireless carrier and the building owner or lessee despite compliance with all relevant regulatory requirements. Thus, the wireless carrier would be materially prejudiced if the proceeding proceeded without it.
The fifth factor, whether a judgment in the omitted party’s absence will be adequate, concerns the public’s interest in the efficient resolution of controversies. The court is aware that joint tortfeasors are not necessary parties to the same action (see Hecht v City of New York, 60 NY2d 57, 64 [1983]), but absent a ruling on the extent of the wireless carrier’s emissions standards in relation to the FCC, there can be no meaningful judgment. After all, plaintiffs are asking the court to determine that RF emissions emanating from the wireless transmission antennas located on the subject property are harmful, and constitute extreme and outrageous conduct.
Lastly, the court must consider whether plaintiffs will have access to a meaningful forum if the case is dismissed. This factor implicates both the parties’ interests and the public’s interest in avoiding piecemeal litigation. As stated in Broyde v Gotham Tower, Inc. (13 F3d 994, 998 [6th Cir 1994]), plaintiffs may lodge a complaint with the wireless carrier and the local FCC office. Plaintiffs may also file petitions to deny the renewal applications filed by AT & T with the FCC. After taking these steps, plaintiffs may have an opportunity to pursue federal court review of their claims. An aggrieved party may seek a review of decisions and orders of the FCC in the United States Court of Appeals for the District of Columbia Circuit (id., citing 47 USC § 402 [b]; see also FCC v ITT World Communications, Inc., 466 US 463, 469 [1984]).
B. Failure to State a Cause of Action
A party may move for a judgment dismissing all causes of action where the court lacks subject matter jurisdiction (see CPLR *1002 3211 [a] [2]). Under CPLR 3211 (a) (7), “[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that. . . the pleading fails to state a cause of action.”
On a motion to dismiss for failure to state a cause of action pursuant to CPLR 3211 (a) (7), the court must accept the factual allegations in the complaint and supporting affidavits as true, accord plaintiff all favorable inferences which may be drawn from the facts, and determine whether the facts as alleged fit within any cognizable legal theory (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]; Morone v Morone, 50 NY2d 481, 484 [1980]; Rovello v Orofino Realty Co., 40 NY2d 633, 634 [1976]). If the allegations in the complaint are merely conclusory and have no factual support, the complaint fails to state a cause of action (see M.J. & K. Co. v Matthew Bender & Co., 220 AD2d 488 [2d Dept 1995]).
1. Private Nuisance Claim
Defendants are entitled to dismissal of the private nuisance claim as the operation of the cell phone tower is not unreasonable because it complies with all applicable laws and regulations.
A nuisance is a continuous or persistent condition that threatens the comfort and safety of neighboring tenants and which is likely to recur (see Domen Holding Co. v Aranovich, 1 NY3d 117 [2003]). A private nuisance requires a showing of an intentional and substantial interference with the right to use or enjoyment of land (see Copart Indus. v Consolidated Edison Co. of N.Y., 41 NY2d 564, 570 [1977]; Weinberg v Lombardi, 217 AD2d 579 [2d Dept 1995]). The elements of the tort of private nuisance are: (1) an interference substantial in nature; (2) intentional in origin; (3) unreasonable in character; (4) with plaintiffs right to use and enjoy land; (5) caused by defendant’s conduct in acting or failing to act (see Copart Indus., 41 NY2d at 570).
The law of private nuisance involves a balancing of interests. Persons who live in organized communities have to tolerate some damage, annoyance or inconvenience from each other (see Nussbaum v Lacopo, 27 NY2d 311 [1970]). In determining whether a defendant’s use of property is a nuisance, the court must weigh the gravity of the harm to plaintiff against the utility and necessity for defendant’s conduct (see Little Joseph Realty v Town of Babylon, 41 NY2d 738 [1977]; see also Copart Indus., 41 NY2d at 572 [a claim of nuisance “traditionally *1003 requires that, after a balancing of the risk-utility considerations, the gravity of harm to a plaintiff be found to outweigh the social usefulness of a defendant’s activity”]).
In Copart Indus., the operator of an automobile servicing business sought damages from a power company on the ground that the noxious emissions from the power plant caused damage to the exterior of cars on plaintiffs premises and that plaintiff had to close his business because of the emissions. The Court of Appeals ruled that a party is
“subject to liability for a private nuisance if his conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities” (id. at 569 [citations omitted]).
Generally, when the use of a property is expressly authorized for the operation of a business or activity, and its operation is reasonable, no actionable per se nuisance is created (see Bove v Donner-Hanna Coke Corp., 142 Misc 329 [Sup Ct, Erie County 1931]). Here, plaintiffs failed to satisfy any of the elements of private nuisance.
First, there was no unreasonable or unlawful conduct on the part of defendants. The maintenance and operation of cell phone towers have become public necessities that are lawful in character and are in the public interest. In view of the widespread use of wireless telephones and the importance of operating this telephone equipment in proximity to cell phone users, Congress has sought to promote installation of wireless equipment. Congress delegated to the FCC responsibility for regulating wire and radio communication service nationally (47 USC § 151 et seq. [Federal Communications Act]). The FCC has broad preemptive authority under the Telecommunications Act of 1996 (the TCA). While section 704 of the TCA preserves some local zoning authority related to the placement, construction or modification of personal wireless service facilities, that authority is restricted in a manner that is not applicable here (see 47 USC § 332 [c] [7] [B] [iv]).
The FCC’s jurisdiction over technical matters associated with RF emissions is exclusive (see Sprint Spectrum L.P. v Mills, 124 F Supp 2d 211, 217 [SD NY 2000], affd in part and revd in part 283 F3d 404 [2d Cir 2002]). The FCC has determined that RF *1004 emissions conforming to its guidelines are safe. The FCC considers its testing and emission standards to represent the best scientific thought on the RF limits necessary to protect the public health and provide a proper balance between the need to protect the public and workers from exposure to excessive RF electromagnetic fields and the need to allow communications services to readily address growing marketplace demands (see Perrin v Bayville Vil. Bd., 2008 NY Slip Op 32401[U] [Sup Ct, Nassau County 2008], affd as mod 70 AD3d 835 [2d Dept 2010]).
In Merrick Gables Assn., Inc. v Town of Hempstead (691 F Supp 2d 355 [ED NY 2010]), the court reviewed the elements of a private nuisance when reviewing a claim that by allowing the installation of cell phone equipment, the town had created a private nuisance. It rejected this ground for liability, concluding that cell phone equipment does not present an abnormally dangerous or ultrahazardous condition, nor was it wrongful or unreasonable given Congress’ intent to accelerate the deployment of wireless telecommunications technology.
In this case, plaintiffs failed to allege violation of any statute or regulation. Because the cell phone tower is operated under the FCC’s regulation and the lawful permits issued to the wireless carrier under that authority, the operation of the cell phone tower in compliance with the applicable regulatory guidelines is not a private nuisance. Additionally, plaintiffs have failed to allege that defendants or the wireless carrier have been negligent in their activities or that their activities have been unreasonable or unnecessary. Further, plaintiffs have not sufficiently alleged that defendants’ conduct is actionable under rules governing liability for abnormally dangerous conditions and activities. Consequently, the defendants may not be held liable for an injury to plaintiffs in the absence of a showing that they knew about the existence of a hazardous condition or that they should have reasonably known that the RF emissions emanating from the cell tower constituted a danger.
Defendants have no special duty to plaintiffs, either under the TCA or under New York law, to manage the cell tower or to protect plaintiffs from RF emissions. Further, no showing has been made that defendants have any control over the cell phone tower (see State of New York v Monarch Chems., 111 Misc 2d 343 [Sup Ct, Broome County 1981]). Amalithone owns the property upon which the tower and wireless transmission antennas are located, and the union occupies the building situated on that property. One of these defendants leased, licensed or *1005 permitted the placement and continued operation of the cell tower and wireless transmission antennas. However, neither defendant installed the electronic equipment at or around the cell phone tower, nor do they own, operate, manage or control that equipment. Therefore, the cause of action for private nuisance must be dismissed.
2. The Other Causes of Action
As to the other causes of action, plaintiffs allege that in permitting AT & T to install the cell phone tower, defendants effected a taking of their property in violation of their constitutional rights. It is clear, however, that a property owner may only pursue a takings claim against a governmental entity (see Merrick Gables Assn., Inc., 691 F Supp 2d at 360). The defendants are not governmental entities. Accordingly, this claim must also be dismissed.
Under New York law, trespass is “an interference with a person’s right to possession of real property either by an unlawful act or a lawful act performed in an unlawful manner” (Kurzner v Sutton Owners Corp., 245 AD2d 101 [1st Dept 1997] [dismissing claim for trespass based on alleged excessive heat where defendant did not act unlawfully]). Here, defendants are in compliance with all the applicable standards for RF emissions as established by the FCC. Therefore, plaintiffs’ allegations are insufficient to establish a trespass claim.
Liability may be imposed for the intentional infliction of emotional distress “only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community” (see Murphy v American Home Prods. Corp., 58 NY2d 293, 303 [1983], quoting Restatement [Second] of Torts § 46, Comment d; see also Capellan v Marsh, 71 AD3d 505 [1st Dept 2010]). The facts as alleged in the complaint fail to rise to the level of outrageous conduct required to support a cause of action for intentional infliction of emotional distress.
By the same token, “[p]unitive damages are awarded in tort actions ‘[w]here the defendant’s wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime’ ” (Prozeralik v Capital Cities Communications, 82 NY2d 466 [1993], quoting Prosser and Keeton, Torts § 2, at 9 [5th ed 1984]). Further, the purpose of punitive damages is not to remedy private wrongs, but to vindicate public rights (see Garrity v Lyle Stuart, Inc., 40 NY2d *1006 354, 358 [1976]). Moreover, “a demand for punitive damages may not constitute a separate cause of action for pleading purposes” (Rimany v Town of Dover, 72 AD3d 918, 923 [2d Dept 2010], quoting Rosenblum v Frankl, 57 AD3d 960, 961 [2d Dept 2008]).
Plaintiffs further assert that Mr. Minieri, the property’s building manager, made representations which were fraudulent and misleading when he sent plaintiffs’ counsel a copy of the Compliance Certification. However, plaintiffs have not made any specific and detailed allegations regarding their reliance on those representations or that the certificate itself was fraudulent.
Additionally, plaintiffs have failed to allege that defendants had the requisite intent to establish a basis for asserting prima facie tort. “Disinterested malevolence” or malice is the standard by which intent must be established for this claim. Thus, the “genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another” (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 333 [1983] [citation omitted]). When the intent is mixed, so that other motives are present for defendants’ actions, such as profit or self-interest, then the mixture of motives bars recovery under prima facie tort (see Marcella v ARP Films, Inc., 778 F2d 112, 119 [2d Cir 1985]). Lastly, special damages have not been pleaded with any specificity (see Mancuso v Allergy Assoc. of Rochester, 70 AD3d 1499, 1501 [4th Dept 2010] [dismissing prima facie tort claim where complaint only contained general statement that plaintiff was “damaged in the amount of not less than ($1 million)”]). Accordingly, this claim must be dismissed.
Assault is defined as an intentional attempt or threat to do injury or commit a battery. To sustain a cause of action to recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact (see Holtz v Wildenstein & Co., 261 AD2d 336 [1st Dept 1999]). A battery is intentional and wrongful physical contact with a person without his or her consent (see id.; see also Pope v State of New York, 192 Misc 587 [Ct Cl 1948], affd 211 App Div 1015 [1950]; Clayton v Keeler, 18 Misc 488 [Sup Ct, NY County 1896]). No deliberate act was taken by defendants to make contact with plaintiffs’ persons or property. Again, plaintiffs’ failure to assert intent is dispositive of their claims for assault and battery.
*1007 “Imposing strict liability upon landowners who undertake abnormally dangerous activities is not uncommon” (Doundoulakis v Town of Hempstead, 42 NY2d 440, 448 [1977] [citation omitted]). Liability is premised upon the consideration that “those who engage in activity of sufficiently high risk of harm to others, especially where there are reasonable even if more costly alternatives, should bear the cost of harm caused the innocent” (id. [citation omitted]; see also Spano v Perini Corp., 25 NY2d 11, 17-18 [1969]; Wanich v Bitter, 12 Misc 3d 1165[A], 2006 NY Slip Op 51062[U] [Sup Ct, Nassau County 2006]).
The determination of whether a business or activity is ultra-hazardous or an abnormally dangerous condition is based on a number of factors including: (1) the existence of a high degree of harm to a person, land or chattel of others; (2) the likelihood that the harm that will result is great; (3) the inability to determine the risk by the exercise of reasonable care; (4) the extent to which the activity is not a matter of common usage; (5) the inappropriateness of the activity to the place where it is carried on; and (6) the extent to which its value to the community is outweighed by its attributes (see Wanich v Bitter, 2006 NY Slip Op 51062[U] [2006]; see also Searle v Suburban Propane Div. of Quantum Chem. Corp., 263 AD2d 335 [3d Dept 2000]).
Plaintiffs cannot allege that the operation of wireless transmission antennas presents an inherently abnormally dangerous or ultrahazardous condition (see Merrick Gables Assn., Inc. v Town of Hempstead, 691 F Supp 2d 355 [2010], supra). Because plaintiffs have failed to allege any basis for imposing strict liability upon the defendants, this cause of action must be dismissed.
Nor have plaintiffs stated a viable constitutional cause of action. Since the complaint fails to state a cause of action against either of the defendants, it is axiomatic that neither defendant may be held liable under any theory of vicarious liability (see Pereira v St. Joseph’s Cemetery, 54 AD3d 835, 837 [2d Dept 2008] [holding that where no causes of action were sustained, “there is no primary liability upon which such a claim of vicarious liability might rest”]; see also Karaduman v Newsday, Inc., 51 NY2d 531, 546 [1980]; Rojas v Feliz, 24 AD3d 652 [2d Dept 2005]).
Because the complaint fails to state a claim for relief, defendants’ motion to dismiss the complaint in its entirety is granted.
*1008 Accordingly, it is hereby ordered that defendants’ motion to dismiss the complaint in its entirety is granted.